Chicago Transit Authority, a Municipal Corporation, Plaintiff-Appellee, v. Fair Employment Practices Commission, Defendant-Appellant, and Wilford C. Spears, Defendant.

Gen. No. 52,530.

First District, First Division.

December 16, 1968.

William G. Clark, Attorney General of the State of Illinois, of Chicago (John J. O'Toole and Stuart D. Perlman, Assistant Attorneys General, of counsel), for appellant.

George J. Schaller, O. R. Hamlink, Jerome F. Dixon, and James A. McLendon, of Chicago, for appellee.

MR. JUSTICE ADESKO delivered the opinion of the court.

This is an action for administrative review under the Administrative Review Act, Ill Rev Stats 1967, c 110, par 264 et seq., of a decision and order by the Illinois Fair Employment Practices Commission, hereinafter referred to as the Commission, against the Chicago Transit Authority, hereinafter referred to as the CTA. The Commission found that the CTA had committed an unfair employment practice as defined in section 3(a) of the Illinois Fair Employment Practices Act, Ill Rev Stats 1967, c 48, par 853. The Circuit Court of Cook County reversed the decision of the Commission on a finding that the Commission's order was not supported by a preponderance of the evidence. This appeal is taken by the Commission from the Circuit Court's order.

On March 30, 1964, a charge was filed with the Commission by Wilford C. Spears, charging his employer, the CTA, with an unfair employment practice under the Illinois Fair Employment Practices Act. On November 30, 1965, the Commission, in accordance with the applicable provisions of the Act, issued a formal complaint of unfair employment practice on behalf of Spears. The CTA answered the complaint denying that it had committed any unfair employment practice as charged. In substance, the charge filed with the Commission and the formal complaint issuing therefrom alleged that Spears, a switchman employed by the CTA for over ten years, was involved in his first accident on February 28, 1964, and as a result of this accident he was discharged. Subsequently, on March 25, 1964, he was reinstated as a conductor, a demotion in job classification. As to the matter of discipline, Spears alleged that he had been

subjected to more severe disciplinary action than other employees of the CTA who had only received token punishment in accidents more severe than his.

Pursuant to notice, the cause was set for public hearing before a Hearing Examiner of the Commission on January 10, 1966. Throughout the proceedings, both parties were represented by counsel. They were given full opportunity to offer evidence, examine and cross-examine witnesses, submit briefs and present oral argument. After extensive hearings, the Hearing Examiner found that the CTA did violate section 3(a) of the Fair Employment Practices Act, and his report recited that his findings and conclusions were based upon a preponderance of the evidence as required under section 8(f) of the Act. The order and decision of the Commission also recited that it was based upon a preponderance of the evidence.

The CTA filed Administrative Review proceedings, pursuant to the provisions of the Administrative Review Act, Ill Rev Stats, 1967, c 110, par 264 et seq., as provided for in section 10 of the Fair Employment Practices Act. In the complaint in the Administrative Review proceeding, plaintiff CTA charged that the allegations of Spears' complaint filed with the Commission of one or more unfair labor practices against him were not sustained or proved by a preponderance of the evidence; that a preponderance of the evidence did not establish that the discipline meted out to Spears was more severe than that meted out to other CTA employees for similar or greater accidents; that the Hearing Examiner erroneously concluded to the contrary; and that the findings of the Commission were unreasonable and arbitrary.

The CTA argued before the trial court that the Commission's order and decision was not supported by a preponderance of the evidence. The court, agreeing with the CTA, found that a preponderance of the evidence

did not support the findings and conclusions of the Commission that Wilford C. Spears was discriminated against and received a more severe disciplinary penalty than other employees would have received; that a preponderance of the evidence did not establish that the CTA committed any unfair labor practice against Wilford C. Spears; and that the Commission's order and decision were not supported by a preponderance of the evidence. The judgment order of the court then adjudged that the order of the Commission be reversed in whole without remandment. The Commission now appeals that order to this Court.

Defendant raised the following issues for determination: (1) whether it is proper to reverse an administrative decision under the Administrative Review Act on the basis that it is not supported by a preponderance of the evidence or that it is against the manifest weight of the evidence; and (2) whether the administrative decision was against the manifest weight of the evidence. A brief review of the evidence submitted by the parties to the Hearing Examiner reveals that the evidence was principally work records of nineteen other CTA employees involved in "chargeable" accidents and rule infractions, and the testimony of Spears and others concerning the accident of February 28, 1964. The work records were presented in order to establish a comparison of the disciplinary action taken by the CTA against these other employees due to their involvement in accidents and. that disciplinary action extended to Wilford C. Spears.

The accident occurred in the CTA's 61st Street Yard, at about 2:50 p. m., on a clear, dry day. Spears testified that he had moved a four-car train into the yard, preparatory to moving it across the lead track through a switching operation which would put the train on another set of tracks for subsequent use later. Stopping the train after moving it in position just far enough to clear the lead track, he walked through the four cars

to the south end of the train, the end nearest the lead track, and entered the motorman's cab. He put the window down, waited for the switch to be thrown, put his head out of the window and looked to the side and the rear as far as he could. As far back as he could see, the upper portion of the lead track was clear and there was no movement upon it. Spears started the train and began moving toward the switch, but did not look around once he had started moving the train, and was not aware of another train moving toward him. Spears heard a noise and quickly made an emergency stop. Another train was coming off the main line into the lead track and the two trains collided, this other train striking the car Spears occupied. The car was tilted to one side and derailed; there were no injuries, and the damages were under $1,000. The car was rerailed and the scene of the accident cleared within a short time. The operator of the other train was Lester E. Love. Both Spears and Love were held equally responsible for the accident, and both were discharged and then reinstated as conductors only. Spears lost twenty-three days' pay and was permanently disqualified as a switchman.

Mr. Love was called as a witness by the CTA. He testified that at the time of the accident he was traveling along the upper lead track at between five and ten miles per hour, and that the two trains made contact by the head end of the Love front car hitting right in back of the Spears' motorman's cab. Love's motorman's cab was on the right side of his front car, the side away from the yard track on which Spears was approaching the puzzle switch. When questioned about the accident at the 61st Street Superintendent's office after the accident, Spears told Mr. O'Connor, station superintendent, that he had a blind spot coming off track "2–above." Spears also claimed to have the right-of-way, because he stated that before he could see Love's train coming into the lead

or entering the lead he, Spears, had his train far enough out to have the lead blocked.

The Hearing Examiner concluded that the CTA supervisory personnel could, as they did, reasonably determine that there was a failure of alertness on the part of Spears, and a degree of fault on his part, that justified some measure of disciplinary action. In other words, the CTA did not act arbitrarily in finding some fault and in determining that some disciplinary action was warranted. The controlling question, in the opinion of the Hearing Examiner, was whether the discipline meted out to Spears, when compared with the severity of discipline meted out in other instances of employee accident cases adduced by both parties, indicates, by a preponderance of the evidence, discriminatory action against Spears by the CTA, which therefore constituted an unfair employment practice within the meaning of the Fair Employment Practices Act.

Spears and his counsel caused the CTA to produce and have placed in the record the work records of seven CTA employees. The CTA, to counter Spears' charge, similarly placed in evidence the work records of twelve more of its employees. The purpose of tendering these work records was to make a comparison of the severity of the accident and the disciplinary action taken in various accident situations as compared with the discipline given to Spears as a result of his accident. The accidents disclosed by the work records were not the subject of any oral testimony by any of the employees involved or the witnesses to those accidents. There was nothing in evidence other than the documents themselves, which, in many cases, did not tell a great deal about any given occurrence, making it difficult to compare one accident with another and to weigh the severity of the resulting discipline. Charles Keiser, CTA Operating Manager, and D. M. Flynn, CTA Superintendent of Transportation, both

stated in substance that in disciplinary cases, each individual case is different, and that there is no rule book type of punishment, but rather that the facts of each case must be evaluated and weighed. Flynn also stated he "could find no reasonable excuse for this accident. . . ."

In comparing the disciplinary action meted out by the CTA in accident cases, the work record of Wilford C. Spears was examined. Mr. Spears' work record revealed he was first employed by the CTA in November, 1953. He qualified for switchman in June 1956, and remained in that job classification until he was demoted to conductor in March 1964, following the accident of February 28, 1964. That accident was his first involvement in a train collision where he had control over operation of a train, during his years as a switchman. Spears, however, admitted being involved in a number of accidents as a CTA bus operator in 1954 and 1955, his work files indicating that four of these accidents were chargeable against him. Both the CTA and Spears were privileged to introduce any other evidence relevant to the issues of the case, but did not do so. Moreover, neither party following the issuance of the Recommended Order and Decision of the Hearing Examiner, made application to the Commission to present additional evidence, as permitted by the Act. The Hearing Examiner found that six of the seven work records introduced by Spears supported the allegation in the Complaint that Spears and other employees of his race were more severely disciplined for accident involvement than other employees at the 61st Street Yard where Spears worked. The seventh work record referred to by Spears was not sufficiently comparable on the facts to the instant case to have evidentiary value. Of the twelve work records introduced by the CTA, of which eight related to employees not employed at the 61st Street Yard where Spears worked, the Hearing Examiner found that two tended to support the CTA's denial of discriminatory application of discipline, and that the other ten

336

were not sufficiently comparable on the facts, and therefore had little relevance for evidentiary purposes.

The Commission upheld the conclusion of the Hearing Examiner that a preponderance of the evidence supported Spears' allegation in his complaint, and found that Wilford C. Spears, by receiving a more severe disciplinary penalty than other CTA employees received under comparable circumstances, was discriminated against by the CTA by being first discharged, then reinstated from the position of switchman to that of conductor because of the accident of February 28, 1964, and that such action on the part of the CTA constituted an unfair employment practice as defined by the Fair Employment Practices Act. Accordingly, Wilford C. Spears' complaint against the CTA was sustained.

The CTA filed an action in the Circuit Court of Cook County for administrative review under the Administrative Review Act, supra. The court, being fully advised in the matter, found that a preponderance of the evidence did not support the findings and conclusions of the order and decision of the Fair Employment Practices Commission that Wilford C. Spears was discriminated against by being demoted from the position of switchman to that of conductor and by being permanently disqualified from future consideration as a switchman and that Wilford C. Spears received a more severe disciplinary penalty because of his race than other employees have received under the most comparable circumstances; and that a preponderance of the evidence did not establish that the CTA committed any unfair employment practice toward Wilford C. Spears in violation of the Fair Employment Practices Act. The court therefore ordered and adjudged that the order and decision of the Fair Employment Practices Commission be reversed in whole without remandment.

██ The purpose of the Administrative Review Act is to provide a method of review whereby decisions of ad-

ministrative bodies may be subjected to the judgments of courts as to their validity. Krachok v. Department of Revenue, 403 Ill 148, 85 NE2d 683 (1949). Defendant contends that under the Administrative Review Act, it is provided that "The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct," Ill Rev Stats 1967, c 110, par 274, and that an administrative decision cannot be reversed unless contrary to the manifest weight of the evidence. It is upon the "prima facie true and correct" portion of paragraph 274 that defendant endeavors to sustain its position, while plaintiff contends that pursuant to paragraph (f), section 8 of the Fair Employment Practices Act, Ill Rev Stats 1967, c 48, par 858(f), the following provision is mandatory upon the Commission:

> "When all the testimony has been taken, the commissioner or hearing examiner shall determine whether the respondent has engaged in or is engaging in the unfair employment practice with respect to the complainant as charged in the complaint. A determination sustaining a complaint shall be based upon a preponderance of the evidence."

██ In construing the provisions of these two separate legislative acts, it is clear the Illinois General Assembly has charged the Fair Employment Practices Commission with the duty of finding that a party has committed an unfair labor practice only where the charge has been proved by a preponderance of the evidence. This requirement that the Commission shall make its determination upon a preponderance of the evidence is applicable only to the Fair Employment Practices Act. All of the cases cited by defendant supporting its position have been decided under acts of the General Assembly which do not have the requirement that "A determination sustaining a complaint shall be based upon a

preponderance of the evidence." The preponderance of the evidence test is unique to the Fair Employment Practices Act and an exception to general legislative policy granting quasi-judicial authority to administrative bodies.

 An administrative agency must pursue the procedure and rules laid down by the legislature to give validity to its action, Chicago Rys. Co. v. Commerce Commission ex rel. Chicago Motor Coach Co., 336 Ill 51, 167 NE 840 (1929), and the purpose of judicial review of an administrative agency's decision and orders is to keep the agency within the jurisdictional and judicial bounds guaranteed by the Constitution and statutes. Curtis v. State Police Merit Board, 349 Ill App 448, 111 NE2d 159 (1953). Where the legislature has imposed a standard of proof upon the findings and conclusions of an administrative body, the "prima facie correct" phrase may only mean that the findings and conclusions of the administrative agency are prima facie correct when it appears that such standard of proof has been met. In the instant case, the trial court analyzed the evidence and determined for itself that the evidence before the Commission did not satisfy the preponderance of the evidence test.

In Motorola v. Illinois Fair Employment Practices Commission, 34 Ill2d 266, 215 NE2d 286 (1966), the procedural facts are similar to the procedural facts here. In the Motorola case, a complaint was filed with the Commission charging Motorola with having committed an unfair employment practice. The Commission made an investigation and determined that there existed substantial evidence that Motorola had committed an unfair labor practice. Thereupon, the Commission issued a complaint of unfair employment practice. The factual issues were referred to a hearing examiner who heard evidence and made a report, resolving the issues against Motorola. Thereafter the Commission sustained the re-

port of the hearing examiner and entered an order and decision finding that Motorola had committed an unfair labor practice. Motorola filed a complaint in the Circuit Court of Cook County under the provisions of the Administrative Review Act to review the order and decision of the Commission. The Circuit Court sustained the action of the Commission and entered judgment against Motorola. An appeal to the Supreme Court was then perfected by Motorola. The essence of the charge, discrimination, was that Motorola had falsely graded an examination of the complainant when he applied for employment. After a lengthy and painstaking review of the evidence, the Supreme Court said:

> "When all the evidence in this case is considered, some suspicion might reasonably remain that the plaintiff had falsely recorded Myart's test score. Under the Fair Employment Practices Act, however, that suspicion is not enough. The Act provides that 'A determination sustaining a complaint shall be based upon a preponderance of the evidence.' (Ill Rev Stats 1963, c 48, par 858(f).) On the record in this case, we are of the opinion that the alleged unfair employment practice was not established by a preponderance of the evidence. The judgment of the circuit court of Cook County is therefore reversed."

It is to be seen that the Supreme Court arrived at its judgment through the test of the preponderance of the evidence and found the evidence wanting. It is significant to note that the Court reversed the action of the trial judge who used an altogether different test, namely that the findings of the Commission were supported by competent evidence from which reasonable men could draw an inference of discrimination.

 In the instant case, it was the trial court's function to ascertain if the findings and conclusions of

the Commission were within the limits of the powers given to the Commission by statute. Since, as we have previously mentioned, the purpose of judicial review is to keep the administrative agency within the bounds guaranteed by the Constitution and by statute, in no other way could the trial court determine whether the Fair Employment Practices Commission kept within the limits of the statute in question in the quantum of proof upon which it (the Commission) was to act than by ascertaining whether the Commission made its determination upon a preponderance of the evidence. This, the trial court found, was lacking. It is our opinion that the trial court properly set aside the findings and conclusions of the Fair Employment Practices Commission pursuant to paragraph 858(f) of the Fair Employment Practices Act, and the holding in the Motorola case, since such findings and conclusions were not supported by a preponderance of the evidence presented.

On review of this administrative proceeding, it is not the function of the Appellate Court to weigh or reweigh the evidence presented, but it is for us to ascertain if the findings and decision of the Commission are supported by a preponderance of the evidence. In this respect, we agree with the trial court for the reasons set forth above. Consequently, the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

BURMAN, P. J. and MURPHY, J., concur.