WESTERN ILLINOIS POWER COOPERATIVE, INC., Plaintiff-Appellant, *v.* THE PROPERTY TAX APPEAL BOARD *et al.*, Defendants-Appellees.

MENARD ELECTRIC COOPERATIVE, INC., Plaintiff-Appellant, *v.* THE PROPERTY TAX APPEAL BOARD *et al.*, Defendants-Appellees.—RURAL ELECTRIC CONVENIENCE COOPERATIVE CO., Plaintiff-Appellant, *v.* THE PROPERTY TAX APPEAL BOARD *et al.*, Defendants-Appellees.

(No. 12322;

(Nos. 12323-12324 cons.;

Fourth District—June 12, 1975.

CRAVEN, J., concurring in part and dissenting in part.

Foreman, Rammelkamp, Bradney, Hall & Dahman, of Jacksonville (Albert W. Hall and T. C. Rammelkamp, of counsel), for appellant Western Illinois Power Cooperative.

John E. Grosboll, of Petersburg, for appellant Menard Electric Cooperative.

Pree & Pree, of Springfield, for appellant Rural Electric Convenience Cooperative.

William J. Scott, Attorney General, of Chicago, (George H. Klumpner, Assistant Attorney General, of counsel), for appellees.

Mr. PRESIDING JUSTICE SIMKINS delivered the opinion of the court:

Plaintiff-Appellant, Western Illinois Power Co., Inc. (hereinafter referred to as WIPCO), appeals, under the Administrative Review Act, from the circuit court's affirmance of a decision of the Property Tax Appeal Board which affirmed the assessed valuation placed on WIPCO's electric transmission lines by the Board of Review of Sangamon County. Appeal decision 69-135 is a consolidation of appeals of decisions of the Board of Review's decisions for the years 1967, 1968 and 1969. The 1967 assessment was on reversal and remand in accordance with an order of the circuit court, following administrative review, but was considered together with the 1968 and 1969 appeals. The same personal property (electric transmission lines) is involved in all three of the appeals consolidated before the Property Tax Appeal Board.

The circuit court affirmed the decision of the Board for each of the years involved, and found that the Board's decision was not against the manifest weight of the evidence and was supported by evidence before the Board for each of the years in question. Plaintiff requests that this court reverse and set the assessed valuation of its lines, or reverse and remand with directions to find the assessed valuation in accordance with the following formula:

> "The ratio in percent of operating revenues per mile of line of the Plaintiff's property to that of taxpayers having property reasonably comparable to that of the Plaintiff and the ratio in percent of net revenues (operating margins) per mile of line of the Plaintiff's property to the net revenues (operating income) per mile of line of taxpayers having property reasonably comparable to that of the Plaintiff shall be averaged. This average shall be averaged with the ratio in percent of the Plaintiff's number of consumers per mile of line to that of taxpayers having property reasonably comparable to that of the Plaintiff. The average of these percentages shall be multiplied by the average assessed valuation of the taxpayers having property reasonably comparable to that of the Plaintiff, and, the product of said multiplication shall be the assessed valuation per mile of line of the Plaintiff's property."

WIPCO is an Illinois not-for-profit corporation whose sole function is to supply electricity to its member cooperative systems at wholesale. It operates in 21 counties. It is owned by seven electric distribution cooperatives, and its board of directors is comprised of representatives of these corporations. WIPCO owned personal property in Sangamon County, for the years in question, consisting of approximately 9.91 miles of 23 K.V. lines and approximately 38.26 miles of 69 K.V. lines. For the year 1967, the supervisor of assessments of Sangamon County pur-

ported to assess the 23 K.V. line at $2090 per mile and the 69 K.V. line at $3025 per mile for a total assessment of $136,445. The same assessor placed a value of $1925 per mile on the 23 K.V. line and $2750 per mile on the 69 K.V. line for a total assessed valuation of $124,285 for the year 1968. For the year 1969, the values were $1775 per mile for the 23 K.V. lines and $2500 for the 69 K.V. lines for a total assessment valuation of $113,-240.00. Plaintiff argues that its lines are overvalued and place the value of the 23 K.V. lines at $210 per mile, and the 69 K.V. lines at $315 per mile for a total assessed valuation of $14,133 for each of the 3 years. The only statutory guideline, if it can be so termed, is contained in section 21 of the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, § 502), which requires that personal property be assessed at its fair cash value. There is no dispute here that the property in question has no "fair cash value" in the commonly accepted sense of that phrase, which imports the concept of what the property would bring when a buyer is willing to buy and a seller is willing to sell. The evidence was that comparative values were of no assistance since, according to the witness Cross, he had never heard of an electric transmission line being sold in the State, nor had he ever heard of one being put up for sale in the open market. We are therefor confronted with the proposition that the measure of value set forth in the statute is unworkable, and constitutes no guideline at all.

The supervisor of assessments for Sangamon County, one Wilson Park, testified on behalf of the Board of Review as to how the assessed valuation of plaintiff's property was arrived at. The precise method used is somewhat difficult to follow. The assessed investor owned utilities by the method of cost of replacement less depreciation. Relying on data supplied by plaintiff as to the age of its lines he assessed those lines by relying, to some degree, on an assessor's manual, revised January, 1965, and supplied by the Illinois Department of Revenue. The manual contains the following helpful directions to the assessor:

"* * * the Illinois Department of Revenue presents suggestions as to values of specific types of property for use of assessing officials. Exercise of 'good judgment' on the part of the assessor is most important since it is impossible in general statements to take into consideration all the important conditions which determine the value of a specific property. * * * Values given here are full values and are relatively conservative, being based on the latest available estimates of Illinois replacement costs. * * * *These values cannot and are not intended to take the place of the assessor's judgment* * * *."

Park testified that he had never heard of a comparative income approach

to the valuation of property, but that one did have to consider income producing ability to some extent in arriving at a proper assessment for the cooperative. The assessor's manual suggests lower assessed valuations for cooperatives than for investor owned utilities. The precise method used by Park in making the 1967 assessment is unclear. His testimony at the prior hearing, prior to remand from the circuit court, indicated that he did not specifically consider plaintiff's income in calculating the 1967 assessment. During the second hearing he testified that he used the Class 3 indicia from the assessor's manual which values 20-year-old lines even though he was aware that the bulk of plaintiff's lines were 3 to 5 years old or perhaps less. His use of this age factor was based on his recognition of the peculiar use and type of the property. He testified that he did this because he was endeavoring to give plaintiff an economic or density factor. He was aware that WIPCO had fewer customers per mile than investor owned utilities.

Park testified that in making the 1968, 1969 assessment he added a new factor in arriving at the valuation. In addition to cost of replacement less depreciation he gave plaintiff a reduction for functional and economic obsolescence. With reference to 1968 and 1969 he stated that he gave plaintiff "*   *   * some additional economic obsolescence   *   *   *," which seems to imply that this concept is, to some degree, intertwined with the economic and density factors which Park had used in arriving at the 1967 valuation. Park endeavored to define economic obsolescence. In essence it can be said that he reduced the valuation of plaintiff's lines because of their location, the fewer number of customers and "less income." His 1968 assessment was lower than the 1967 assessment by the amount of economic obsolescence which he allowed, and this amount was a "*   *   * matter of opinion and judgment   *   *   *." This same factor was utilized to a greater degree in arriving at the 1969 assessment. Park testified that investor-owned utilities are assessed by the cost of replacement less depreciation formula with no reduction for economic obsolescence.

To sustain its claim of assessment in excess of fair cash value the plaintiff relied on the testimony of Albert J. Cross, a lawyer and agricultural economist who had experience in rural electrification cooperative economics and who was employed by the Association of Illinois Electric Cooperatives. Cross testified that in his opinion none of the three traditional methods of determining the value of property, *i.e.*, comparative sales, capitalization of income or replacement cost less depreciation, would accurately determine the value of cooperative electric transmission lines. Cross believed that a great amount of weight should be given to comparative income in assessing the lines of a cooperative. He defined that

term as meaning "You compare the income producing potential of the generation and transmission cooperative with the income producing potential of a similar type of business." He stated that while this approach "* * * has not been used formally and not been called by that name, that Supervisors of Assessments and Boards of Review in many Illinois Counties, in assessing the lines of electric cooperatives, have on an unofficial and informal basis used for years what I have formalized and called a comparative income approach." He thought that replacement costs less depreciation should be given very little weight in assessing lines owned by cooperatives. Cross also thought that another formula which could be used in assessing cooperatively owned lines was to compare the consumer density on its lines with the consumer density on the investor-owned utility lines since, in his opinion, this density bears a direct ratio to the value of the lines, and this formula would result in approximately the same valuation as the result obtained from application of the comparative income formula. Cross agreed that the lines of the public utility and those owned by cooperatives were physically the same type of property, but stated that they were not the same as to their income-producing potential. He testified that he believed that the comparative income approach had been used on an informal basis in Scott, Pike, Morgan and Union counties. Exhibits were introduced to demonstrate the Cross method of calculating assessed valuation for the year 1967. This resulted in a comparative income factor of the WIPCO system to that of investor owned utilities of 8.88 percent. Using this factor the 69 K.V. line per mile would have an assessed valuation of $307.25, and the 23 K.V. lines $194.56.

■■ The Property Tax Appeal Board rejected appellant's contention that the "comparative income" or density of customers per mile formula be utilized in arriving at the fair cash value of its lines. It found, among other things, that "the philosophy of operation of the appellant, as testified by witnesses for the appellant, is to supply electricity to its member systems at cost, no attempt being made to make its gross or net income as high as possible and no attempt being made to realize a profit." It is a fair inference that the methods used by assessors and Boards of Review in this State, in endeavoring to arrive at the fair cash value of transmission and distribution lines owned by cooperatives, is a patchwork of improvisation, predicated in many instances upon the judgment of local authorities and resulting in a total lack of uniformity. Considering the unique character of the property this is a predictable result. We see no need to recite the history and philosophy underlying the creation of electric cooperatives. They serve a particular function, and satisfy a particular need. Whether or not they should be accorded unique treatment, for tax purposes, in view of their function, and the manner in which that function is

discharged is, in our view, a problem to be resolved by the legislature, and not by this court. We therefore find no error in the refusal of the Property Tax Appeal Board to adopt the formula suggested by appellant.

The appellant WIPCO also argues here that on administrative review it is not required to establish that the decision of the Board is against the manifest weight of the evidence and urges this court to reverse and fix the assessed valuation of its lines, or to reverse and remand with directions that the lines be assessed in accordance with a formula which would establish "comparative income" as a factor to be given substantial weight in assessing the lines.

Plaintiff's lines are considered to be personal property for purposes of taxation. The valuation for assessment purposes is defined by statute to be "* * * at its fair cash value." (Ill. Rev. Stat. 1973, ch. 120, § 502.) Section 111.4 of the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, § 592.4) provides, in part, that "The Board shall make a decision in each appeal or case heard by it, *and such decision shall be based upon equity and the weight of evidence* and not upon constructive fraud * * *." (Emphasis supplied.) By the same section it is provided that decisions of the Property Tax Appeal Board are subject to review under the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, § 264 *et seq.*). Section 11 of the Act (Ill. Rev. Stat. 1973, ch. 110, § 274) provides that the findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct.

The opinion of the Property Tax Appeal Board contains the following: "In the consideration of appeals by this Board, the decision of the Board of Review is accorded a prima facie presumption of correctness. It is incumbent upon the appellant to prove such decision to be erroneous and to further offer sufficient evidence to allow this Board to determine the correct valuation for the subject property. * * * We do not believe that the appellant has borne its burden of proof with relation to any of the assessment years in question."

No authority has been cited for the proposition that the decision of the Board of Review is entitled to a "prima facie presumption of correctness" in appeals to the Property Tax Appeal Board, nor have we found any authority which supports the proposition which, of course, imports the further concept that the Property Tax Appeal Board will only disturb the findings and conclusions of fact of the Board of Review unless they are shown to be against the manifest weight of the evidence. We hold that the findings and conclusions of fact of the Board of Review are not to be afforded prima facie weight by the Property Tax Appeal Board.

■■ It seems clear, from the provisions of section 111.4 of the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, § 592.4) that the legislature has

specifically stated the standard to be applied by the Property Tax Appeal Board, and that standard must be followed and applied by the Board. Where the statute creating an agency prescribes the burden of proof to be applied by it in the discharge of its duties, the standard must be the measure by which its decisions are judged. *Motorola, Inc. v. Illinois Fair Employment Practices Com.*, 34 Ill.2d 266, 282, 215 N.E.2d 286.

■■ The appellant would have this court refuse to afford the decision of the Property Tax Appeal Board the prima facie presumption in flat contradiction of the statutory mandate (Ill. Rev. Stat. 1973, ch. 110, § 274). We decline to ignore the statutory requirement.

■■ We may, however, determine whether or not the Property Tax Appeal Board, in arriving at its decision, has acted within and according to the statute creating it. *People ex rel. Thompson v. Property Tax Appeal Board*, 22 Ill.App.3d 316, 317 N.E.2d 121, and we conclude that in affording prima facie correctness to the decision of the Board of Review, and in the imposition of the burden of proof on appellant as above indicated, and in failing to apply the standard imposed by section 111.4 of the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, § 592.4) the Board did not act within and according to the statutory mandate.

■■ Appellant urges us to determine that the decision of the Board is not based on equity and the weight of the evidence; in other words it requests this court to apply to the evidence the standard which the statute required the Board to apply. Our function is not to weigh and reweigh the evidence presented (*Chicago Transit Authority v. Fair Employment. Practices Com.*, 103 Ill.App.2d 329, 243 N.E.2d 638) which we would be doing in endeavoring to apply the standard to the record which was before the Board.

In case bearing our general number 12322, agenda 75-91, we therefore reverse the judgment of the circuit court and remand to the Property Tax Appeal Board for further proceedings consistent with the views expressed herein.

Identical issues are presented in consolidated cases bearing our general numbers 12323 and 12324, agenda 75-92, and the cases are therefore controlled by the above opinion. The judgments of the circuit court are therefore reversed and the cases remanded to the Property Tax Appeal Board for further proceedings consistent with the views expressed herein.

The dispositions made render consideration of other assignments of error unnecessary.

Judgments reversed and cases remanded with directions.

GREEN, J., concurs.

Mr. JUSTICE CRAVEN, concurring in part, dissenting in part:

I concur in the majority opinion holding that the method of assessing plaintiffs' property is for the legislature, not the court. However, I would not remand these cases to the Property Tax Appeal Board. The Property Tax Appeal Board opinions indicate the Board would have reached the same result if the proper standards and burden had been applied. Remandment is neither desirable nor required here.

First, the Property Tax Appeal Board held de novo hearings. Its decisions were based upon the evidence received at those hearings, not upon the record of proceedings before the various boards of review. This is demonstrated by the Appeal Board's clear refusal to adjust the assessed valuation in case No. 12322 and in its small adjustment to the plaintiffs' assessed valuations in Nos. 12323 and 12324.

Second, the essential questions in these cases are of law, not of fact. These questions have been resolved adversely to plaintiffs.

In *People ex rel. Thompson v. Property Tax Appeal Board*, 22 Ill.App. 3d 316, 317 N.E.2d 121, the Appeal Board had contended the plaintiff there had failed to meet her burden of proof to overcome the presumption that the assessed valuation was correct. The appellate court found this erroneous view of the burden of proof issue did not require a reversal and remandment. Similarly, in *Pratt v. Davis*, 224 Ill. 300, 79 N.E. 562, the trial court's erroneous ruling on the burden of proof was harmless error in light of the pleadings and evidence when considered under the correct propositions of law.

The record discloses that the results reached below will be repeated upon remand. Therefore, the error concerning the burden of proof was harmless.