SCHOOL DISTRICT NO. 175, ST. CLAIR COUNTY, Plaintiff-Appellant, *v.*
ILLINOIS FAIR EMPLOYMENT PRACTICES COMMISSION *et al.*,
Defendants-Appellees.

Fifth District  No. 76-485

Opinion filed January 24, 1978.—Rehearing denied March 21, 1978.

G. MORAN, J., specially concurring.

Robert F. Kaucher, of Meyer and Kaucher, of Belleville, for appellant.

William J. Scott, Attorney General, of Chicago (George W. Lindberg, Paul J. Bargiel, and Gregory G. Lawton, Assistant Attorneys General, of counsel), for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This appeal is taken from a judgment entered by the circuit court of St. Clair County affirming in part and remanding in part an order of the defendant, Illinois Fair Employment Practices Commission (Commission), finding that plaintiff, School District No. 175 of St. Clair County (District), had unlawfully discriminated against defendant, Linda Tiernan, in refusing to hire her because of her sex.

On August 4, 1972, Tiernan filed a charge of unfair employment practices with the Commission against the District alleging that she had been refused employment as a 5th grade teacher because of her sex. On December 26, 1972, Tiernan filed another charge alleging that she had been refused employment as a substitute teacher during the 1972-1973 school year because of the earlier charge that had been filed. On February 13, 1973, and June 22, 1973, complaints were issued by the Commission on behalf of Tiernan on each of the charges respectively. Following public hearings, the hearing officer recommended in each cause that the charges were proven by a preponderance of the evidence. The causes were consolidated for purposes of review by the Commission. The District filed a petition for review with the Commission raising as new matter the single issue of whether it had been denied due process because of an unreasonable delay in the proceedings before the Commission. The Commission limited oral argument before it to the issue of delay raised

by the District and on September 10, 1975, the Commission entered its order and decision. In the order and decision, the Commission reviewed the evidence presented in the public hearings and found that each of the charges had been proven by a preponderance of the evidence and accordingly ordered *inter alia* that the District cease and desist its unfair unemployment practices against Tiernan; that the District employ Tiernan in the position or a comparable position as that which existed on June 29, 1972; that the District pay Tiernan an amount equal to that she would have earned during the period as a 5th grade teacher less any amount actually earned by Tiernan during the period with interest on the balance at seven per cent compounded annually; that the District clear from Tiernan's personnel records all references to the instant charges filed; and that the District pay all Tiernan's reasonable attorney's fees incurred in connection with the instant cause.

On a complaint for administrative review by the District, the lower court affirmed the order and decision of the Commission except that portion of the order which sets forth a formula for ascertaining the amount of monetary damages to be awarded to Tiernan. The court remanded this portion of the order for such further proceedings as may be necessary to determine the exact amount of compensation to be awarded Tiernan. The District brings this appeal.

The District's first contention is directed at the findings of the Commission that the District had committed unfair employment practices. Pursuant to section 3 of the Fair Employment Practices Act (Ill. Rev. Stat. 1973, ch. 48, par. 853), it is an unfair employment practice:

"(a) For any employer, because of the * * * sex * * * of an individual to refuse to hire * * * or
* * *
(d) For any employer * * * to discriminate against any person * * * because he or she, reasonably and in good faith, has made a charge * * * under this Act * * *."

The evidence presented at the hearings showed that at the end of the 1971-1972 school year the District began the process of selecting a new 5th grade teacher for the Ellis School whose services would be utilized under a new "team teaching" concept in conjunction with two women teachers. The selection process was conducted by an interviewing committee consisting of the principal of Ellis School, James Meyer, and a number of teachers. The function of the committee was to recommend someone to the School Board to hire from the applicants for the position. When Tiernan learned of the opening, she contacted Meyer and inquired about the possibility of employment. She testified that she was told by Meyer that they "were looking for a man if they could find one with elementary [school] qualifications." Thereafter Tiernan and other applicants were

interviewed by the committee. Following the interviews, James Seka was determined to be the first choice of the committee members. He was recommended by the committee for the position and subsequently he was hired by the School Board based on the recommendation. Another applicant, Betty Cox, was generally the second choice of the committee members, however, she testified that prior to the selection of any of the applicants, she had accepted a teaching position at another school. Tiernan, generally, was the third choice of the committee members, although it is noted that the committee, once having determined their first choice, had no need to collate their collective judgment as to second choice, third choice, and so on. After her interview before the committee, Tiernan received a letter of rejection from Meyer stating in part that "after much deliberation the committee has decided that it would be best to have a man in the 5th grade." A similar letter was sent to at least two other women. There was also evidence that Tiernan had a college grade-point average of 4.5 out of 5.0 in obtaining her undergraduate degree from Southern Illinois University and that she had had approximately two years of professional teaching experience. The applicant who was hired, Seka, on the other hand, had a 3.7 average out of 5.0 also from Southern Illinois University and he had had no professional teaching experience.

The criteria used by the committee in making its selection included: teaching experience, student teaching recommendations, philosophy of education, willingness to further formal education, ability to communicate with children, enthusiasm, and ability to work with the teaching team concept. The relative importance of each criterion was personally determined by each member of the committee independently. There was testimony that Seka was selected because of his enthusiasm, command of the English language and growth potential. One member of the committee also testified that the committee members had discussed the advantages to having a male teacher in the 5th grade.

With respect to the second charge, the evidence showed that at the end of September 1972, subsequent to the filing by Tiernan of the original charge with the Commission, Grace Moon, the secretary to the Superintendent of the District, Leonard Parrish, was instructed by Parrish not to call Tiernan has a substitute teacher for the District until "some decision had been made." Tiernan had properly placed her name upon the District's list of substitute teachers for the 1972-1973 school year. During the 1971-1972 school year, Tiernan had also placed her name upon the list and had been called by the District as a substitute teacher and so employed for a total of 56 days. During the school year in issue, however, she was never called by the District. Parrish testified that initially he had been directed by the School Board to temporarily not employ Tiernan as a substitute teacher in order to avoid "embarrassing" her. He stated that

he thereafter saw a newspaper advertisement announcing that Tiernan had become a realtor and he therefore assumed that she had a full-time job. The newspaper ad appeared during the end of November 1972. Tiernan had never requested that her name be removed from the list of substitute teachers nor had the District contacted her to inquire whether she was still available for such teaching.

On appeal the District contends that the factual determination and legal conclusions of the Commission are contrary to the "preponderance of the evidence" and are against the "manifest weight of the evidence." Before analyzing the evidence, we find it necessary to first consider what standard of review ought to be applied in the instant case.

■■ In an action to review a determination of an administrative agency, the findings of the agency on questions of fact are deemed to be prima facie true and correct. (Ill. Rev. Stat. 1975, ch. 110, par. 274.) In addition, the general rule which has been applied by courts reviewing a decision of an administrative agency is that such a decision will not be disturbed unless it is contrary to the manifest weight of the evidence. Some Appellate Courts have applied this general rule to decisions of the Fair Employment Practices Commission. (*Springfield-Sangamon County Regional Plan Com. v. Fair Employment Practices Com.* (4th Dist. 1976), 45 Ill. App. 3d 116, 359 N.E.2d 174, *appeal allowed* (1977), 65 Ill. 2d 585; *General Electric Co. v. Fair Employment Practices Com.* (1st Dist. 1976), 38 Ill. App. 3d 967, 349 N.E.2d 553; *Chicago-Allis Manufacturing Corp. v. Fair Employment Practices Com.* (1st Dist. 1975), 32 Ill. App. 3d 392, 336 N.E.2d 40; *A. P. Green Services Division v. Fair Employment Practices Com.* (1st Dist. 1974), 19 Ill. App. 3d 875, 312 N.E.2d 314.) However, it is to be noted that under section 8.01(c) of the Fair Employment Practices Act (Ill. Rev. Stat. 1973, ch. 48, par. 858.01(c)), the hearing examiner or commissioner determines whether the respondent has been engaged or is engaging in an unfair employment practice with respect to the complaint based on a preponderance of the evidence. Therefore, in *Moss-American, Inc. v. Fair Employment Practices Com.* (5th Dist. 1974), 22 Ill. App. 3d 248, 259, 317 N.E.2d 343, 351, this court stated that:

> "In reviewing an order of the Commission, the preponderance of the evidence standard must be adopted as required by the Fair Employment Practices Act. '[This is the only means of keeping] the agency within the jurisdictional * * * bounds guaranteed by the Constitution and statutes.' " (Accord, *Chicago Transit Authority v. Fair Employment Practices Com.* (1st Dist. 1968), 103 Ill. App. 2d 329, 243 N.E.2d 638.)

A preponderance of the evidence standard has also been adopted by our Supreme Court when reviewing orders of the Commission in *Motorola, Inc. v. Fair Employment Practices Com.* (1956), 34 Ill. 2d 266, 215 N.E.2d

286, and *Olin Corp. v. Fair Employment Practices Com.* (1977), 67 Ill. 2d 466, 367 N.E.2d 1267. Consequently, in the case at bar in reviewing the order of the Commission, we reject the manifest weight of the evidence standard and shall apply a preponderance of the evidence standard. As stated in *Moss-American*:

> "By a preponderance of the evidence it is meant the greater weight of the evidence, not necessarily in numbers of witnesses, but in merit and worth that which has more evidence for it than against it is said to be proven by a preponderance. Preponderance of the evidence is sufficient if it inclines an impartial and reasonable mind to one side rather than the other." 22 Ill. App. 3d 248, 259, 317 N.E.2d 343, 351.

We come now to a consideration of the evidence in the instant case. The Commission determined first that the District had engaged in an unfair employment practice in refusing to hire Tiernan because of her sex based primarily upon the following findings: First, the Commission found that between Tiernan and Seka, Tiernan was the better qualified. Secondly, the Commission found, in effect, that the interviewing committee's selection of a teacher was ultimately narrowed down to a choice between Seka and Tiernan. Lastly, the Commission found that the interviewing committee's final choice of Seka over Tiernan was based upon the criterion of sex.

■■■ The Commission's finding that as between Seka and Tiernan, Tiernan was the better qualified to be a 5th grade teacher, was based solely on a comparison of the school grades and professional experience of each. The Commission totally rejected a consideration of the other criteria, as shown by the evidence, which was used by the interviewing committee in making its recommendation. We find no competent evidence in the record by which the Commission could pick and choose among the criteria and determine that grades and experience deserved the greatest weight. The proper criteria to be used in the selection and hiring of teachers is within the province of professional educators and those charged with the responsibility for choosing teachers and is not a function of the Commission to so determine. The evidence shows that the qualifications employed by the interviewing committee was much broader than merely a comparison of the grades and experience of the applicants. That most of the criteria used by the interviewing committee tended to be "subjective" and "nebulous" is of no import where, as here, no inference of discrimination is alleged thereby. Under the Act, the focus of the Commission ought to be on that which is specifically prohibited by the Act, namely, as pertinent here, whether the District refused to hire Tiernan because of the additional criterion of sex.

■■ We, however, consider that the greater weight of the evidence

does establish that under the criteria used by the interviewing committee, the selection of a 5th grade teacher resolved itself upon a choice between Seka and Tiernan since Betty Cox had accepted another teaching position prior to the time a selection was made and since the other applicants both male and female were generally ranked below Seka and Tiernan. The decisive issue is thus, upon what basis did the interviewing committee choose Seka over Tiernan? The letter of rejection sent by Meyer to Tiernan specifically states that this choice was made on the basis of sex. The letter stated that: "After much deliberation the committee has decided that it would be better to have a man in the 5th grade." This declaration lacks any subtlety and it refers not merely to a decision by Meyer himself but rather to a decision by "the committee" as a whole. This evidence, moreover, was corroborated by the testimony of another committee member that the committee had discussed the advantages of hiring a male teacher and her statement that such would be "advantageous." There was also testimony by Tiernan that prior to her interview, she had been told by Meyer that the committee desired to hire a male, if a qualified one could be found. We note that there is no evidence that the fact that Seka was a male was a bona fide occupational qualification, under section 3 of the Act, as where such might be the case under the circumstances for purposes of discipline or role identification. The District does not dispute that a refusal to hire Tiernan, based primarily on her sex, would be prohibited by the Act. We find that the Commission's conclusion that this, in fact, was the reason that the District refused to hire Tiernan, is supported by a preponderance of the evidence.

Concerning the further finding by the Commission that the District engaged in an unfair employment practice by refusing to hire Tiernan as a substitute teacher during the 1972-1973 school year because she had filed the original charge, we find such to also be supported by a preponderance of the evidence.

■■ The evidence showed that at the end of September 1972, after the original complaint had been filed, Parrish instructed his secretary, pursuant to a directive by the School Board, not to call Tiernan as a substitute teacher despite the fact that her name had properly been placed on the list of available substitute teachers. During the prior year, before the original charge had been filed, Tiernan had been called a total of 56 times, yet during the year in issue she was never called. Parrish did not and could not claim that the reason for his instruction was the newspaper ad announcing that Tiernan was in the real estate business since the ad had not appeared until two months after the directive. Moreover, even after the ad had appeared, it cannot be reasonably concluded that such was the reason for continuing the directive since by Parish's own admission the directive was unrelated to Tiernan's actual

availability and in any event, Tiernan had not withdrawn her name from the list. Rather we find the motive and purpose of the District to be apparent from the evidence and we find no basis to disturb the Commission's conclusion.

Next, the District contends that the Commission was without authority to order an award to Tiernan of her attorney's fees. The Commission responds by arguing that since this issue has been raised for the first time in this court, the District waived consideration of the issue.

■■ In *City of Chicago v. Fair Employment Practices Com.* (1976), 65 Ill. 2d 108, 357 N.E.2d 1154, our supreme court held that the Commission is without statutory authority to award attorney's fees to a successful litigant and that absent such authorization, any such order exceeds the jurisdiction of the Commission, is void, and "may be attacked at any time or in any court, either directly or collaterally." (65 Ill. 2d 108, 112, 357 N.E.2d 1154, 1155, quoting from *Barnard v. Michael*, 392 Ill. 130, 63 N.E.2d 858.) We find *City of Chicago* to be controlling on the issue raised and we accordingly hold that portion of the Commission's order awarding attorney's fees to Tiernan to be void as exceeding the jurisdiction of the Commission.

■■ The District further contends without citing any authority that the Commission was without authority to order the District "to destroy" "all public records" of the District concerning the instant cause. The District's statement is inaccurate since no such order was entered by the Commission. Rather, the Commission ordered:

> "That Respondent shall clear from Complainant's personnel records all references to Complainant's charge of unfair employment practices, the events leading thereto, and the subsequent disposition thereof; * * *."

The order is thus limited to the "references" to Tiernan's charge of unfair employment practices, contained in Tiernan's "personnel record." The purpose of such an order is clearly designed to eliminate any further discrimination against Tiernan because she had made the charges. Authorization for such an order is found in section 8.01(c) of the Act (Ill. Rev. Stat. 1973, ch. 48, par. 858.01(c)). This section allows the commissioner or hearing officer to issue a recommended order requiring the respondent "to cease and desist from the unfair employment practice complained of, and to take such further affirmative or other actions with respect to the complainant as will eliminate the effect of the practice complained of." Therefore we find no merit to the contention of the District.

■■ The District also contends, again without any citation of authority, that the Commission erred in its ordered formula for determining the compensation to be awarded by including as a part thereof the award of

interest on the difference between the amount Tiernan would have earned had she been hired by the District and the amount she actually earned during the intervening period. The lower court reversed this portion of the Commission's order setting forth a compensation formula and remanded for any further proceedings as may be necessary to determine the exact compensatory damages to be awarded Tiernan. We find it appropriate, however, to address the issue raised for purposes of judicial economy.

It is undisputed that under the remedies section of the Act (Ill. Rev. Stat. 1973, ch. 48, par. 858.01(c)), the Commission has statutory authority to award compensatory damages. (*A. P. Green Services Division v. Fair Employment Practices Com.* (1974), 19 Ill. App. 3d 875, 312 N.E.2d 314.) As stated in *A. P. Green*:

> "The intent of the Fair Employment Practices Act is to insure equal employment opportunity and to rid a complainant of the effects of discrimination which includes the pecuniary loss suffered as a result of the discriminatory practice. The authority to award compensatory damages is within the F.E.P.C.'s power to take affirmative or other actions in respect to the complainant that will eliminate the effects of the unfair employment practice." (19 Ill. App. 3d 875, 883, 312 N.E.2d 314, 320.)

In turn, however, we find no suggestion that the legislature intended to empower the Commission to award any more monetary damages than necessary "to rid a complainant of the effects of discrimination." It follows then, that the authority of the Commission to award compensatory damages is limited to only the actual pecuniary loss shown to have been suffered as a result of the unfair employment practice. In the instant case, the record is barren of evidence of the actual pecuniary loss suffered by Tiernan. On remand, consequently, the Commission should only award that amount of actual pecuniary loss which may be shown to have been suffered by Tiernan.

Lastly, the District urges that it was denied due process and equal protection by the Commission "in refusing consideration on review of the entire case, and in refusing oral argument of the entire case."

■■ After the hearing examiner filed his recommended orders with the Commission, the District filed a petition for review pursuant to section 8.02 of the Fair Employment Practices Act (Ill. Rev. Stat. 1973, ch. 48, par. 858.02), raising the issue of unreasonable delay in the Commission's proceedings. Thereafter, oral argument was had before the Commission on the issue of delay. The District now asserts that oral argument was limited to this issue over the "strenuous objection" of the District. The record shows, to the contrary, that no objection was raised to the limitation imposed upon oral argument. Counsel for the District in fact

acquiesced to the limitation imposed and merely stated that he did not wish to be understood as waiving a full review of the evidence by the Commission. Since the District acquiesced in the limitation imposed upon oral arguments, we find the District is estopped from now complaining of the limitation imposed.

■■■ The District further asserts that the Commission "failed and neglected" to review "all of the matters in issue" which appeared upon the record and that it limited its review of the hearing examiner's recommended order to only the question of delay. The Commission appears to respond by way of a motion to cite supplemental authority filed after its brief was submitted that the petition for review was not properly filed with the Commission in accordance with its rules. This point which was not properly argued by the Commission is waived. (Ill. Rev. Stat. 1975, ch. 110A, par. 341.) Turning to the assertion of the District, we note that under section 8.02(d) of the Act (Ill. Rev. Stat. 1975, ch. 48, par. 858.02(d)), applicable here, the Commission is required to review the record following the filing of the findings and recommended order of the hearing examiner. Contrary to the assertion of the District, the record clearly shows that the Commission reviewed in full all of the evidence and all questions of law and fact in its order and decision. Since we find that the record does not support the contention raised by the District, we find it to be without merit.

For the foregoing reasons, we affirm the judgment entered by the circuit court of St. Clair County which affirmed in part the order and decision of the Commission and remanded in part for any further proceedings as may be necessary to determine the exact amount of compensatory damages, except that portion of the order awarding attorney's fees, which we reverse.

Affirmed in part, reversed in part, and remanded to the Commission for further proceedings consistent with this opinion.

JONES, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, specially concurring:
I concur with the majority in affirming the judgment of the trial court and reversing the order of attorney's fees. I do not believe, however, that the majority adopted the appropriate standard of review in evaluating the findings of the Fair Employment Practices Commission. I must also question the majority's remand of the case to the Commission to determine the actual pecuniary loss suffered by complainant Tiernan.

The majority holds that in reviewing an order of the Fair Employment Practices Commission, the preponderance of the evidence standard must

be adopted. It is clear that in making the determination, the majority considered only section 8.01(c) of the Fair Employment Practices Act which states that the hearing examiner or commissioner is to determine whether the respondent has engaged or is engaging in an unfair employment practice with respect to the complainant based on a preponderance of the evidence. (Ill. Rev. Stat. 1975, ch. 48, par. 858.01(c).) However, review of this determination is not to be made by a court, but rather by the Commission itself. Section 8.02 of the Act provides that the Commission shall review the record and may adopt, modify, or reverse in whole or in part the findings and recommendations of the hearing examiner. (Ill. Rev. Stat. 1975, ch. 48, par. 858.02(c).) This section further provides that "[t]he Commission shall adopt the hearing examiner's findings of fact if they are not contrary to the manifest weight of the evidence." (Ill. Rev. Stat. 1975, ch. 48, par. 858.02(d).) Section 10 of the Act provides for judicial review of the order of the Commission pursuant to the provisions of the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 48, par. 860). Under the Administrative Review Act, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." (Ill. Rev. Stat. 1975, ch. 110, par. 274.) In accordance with this section it has long been held that findings of fact by an administrative agency may not be set aside unless they are against the manifest weight of the evidence. (*Logan v. Civil Service Com.*, 3 Ill. 2d 81, 119 N.E.2d 754.) Under the terms of the Fair Employment Practices Act, then, the standard of judicial review should be the manifest weight of the evidence standard.

The majority is holding that in fair employment practice cases the review by a court is from the hearing examiner's findings rather than from the order of the Commission. In addition, it confuses the standard to be applied by the hearing examiner in determining whether a complaint is to be sustained with that which should be used by a reviewing court.

The majority also suggests that the Commission improperly awarded compensatory damages and has remanded the case to the Commission to determine the actual amount of pecuniary loss suffered by complainant. The Commission awarded Tiernan an amount equal to what she would have earned as a fifth grade teacher during the period in question less any amount actually earned with 7 percent interest on the balance. This order states the appropriate formula for determining the exact amount of compensatory damages due complainant. The majority states that the Commission is limited to awarding damages equivalent to the actual pecuniary loss suffered by the victim of an unfair employment practice. This is exactly what the Commission did in this case in prescribing a formula for determining the exact pecuniary loss suffered and I believe the remand in this case will serve no useful purpose, but will in fact delay further an award of just compensation to Linda Tiernan.