PHYLLIS ALEXANDER, Plaintiff-Appellant, *v.* ILLINOIS FAIR EMPLOYMENT PRACTICES COMMISSION *et al.*, Defendants-Appellees.

Fourth District    No. 15511

Opinion filed April 25, 1980—Rehearing denied May 30, 1980.

TRAPP, J., dissenting.

Drach, Terrell & Deffenbaugh, P. C., of Springfield, for appellant.

William J. Scott, Attorney General, of Chicago, and Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington (Karen Konieczny, Assistant Attorney General, and William R. Brandt, of counsel), for appellees.

Mr. JUSTICE GREEN delivered the opinion of the court:

Plaintiff, Phyllis Alexander, appeals an order of the circuit court of McLean County entered on February 20, 1979, affirming an order of defendant, the Fair Employment Practices Commission (FEPC), entered on October 14, 1977, dismissing a complaint made to that agency by plaintiff.

Plaintiff's complaint was filed on May 19, 1975. It was based upon section 3(d) of the Fair Employment Practices Act (Ill. Rev. Stat. 1977, ch. 48, par. 853(d)) which states that:

"It is an unfair employment practice:

\* \* \*

(d) For any employer, employment agency or labor organization to discriminate against any person because he or she, reasonably and in good faith, has opposed any practice forbidden in this Act, or because he or she, reasonably and in good faith, has made a charge, testified or assisted in any investigation, proceeding or hearing under this Act; or

\* \* \* ."

In her complaint, plaintiff alleged that she had been dismissed from her employment as a teacher by defendant, Board of Education of Octavia Community Unit School District No. 8 of McLean County, Illinois (School District), in retaliation for her having filed a previous complaint with FEPC.

The evidence before FEPC indicated that plaintiff's dispute with the School District arose from the following set of events. She was employed by the School District as a high school teacher beginning with the 1973-74

school year. In the spring of that term contracts for the following year were negotiated between the School District and the Octavia Educational Association. These included provisions for extra duty activities for teachers and the extra pay to be received for these services. Plaintiff had been school newspaper sponsor during her first year and was paid an additional $306 for this duty. Her new contract, which she signed, reduced her pay for the work to the sum of $140. Some testimony indicated that she was told by persons in the administration that she would not be expected to perform her duties in this respect except during school hours, while other testimony indicated that she had merely been told that some of the work could be done during school hours. Most of the female teachers who engaged in similar extra-duty work received similar pay reductions, and most male teachers, predominantly those involved with athletics, received pay increases for their work.

Plaintiff and various of the female teachers were dissatisfied with the arrangement and discussed the matters among themselves and consulted with an attorney during the summer of 1974. They apparently felt that they had not had adequate representation on the negotiating team and that the School District had not allowed them to have enough input into the pay schedule adopted. The next fall they filed a grievance with the School District pursuant to the provision of an agreement between the Octavia Education Association and the School District. While negotiations were pending, they apparently became dissatisfied with the progress, hired a different attorney and, on January 21, 1975, filed complaints, in which plaintiff was a complainant, with defendant FEPC charging the School District with sexual discrimination in its employment practices with them.

Subsequently, on March 17, 1975, the governing board of the School District unanimously passed a resolution which provided in part that plaintiff's contract would not be renewed for the 1975-76 school term. The following reasons were given for this action:

"1. Failure to communicate with faculty and supervisors.

2. Failure to carry out the extra curricular duties assigned by the building principal during the 1974-75 school term.

3. Failure, on occasion, to supervise students working on the high school newspaper while assigned to and being paid for this extra duty.

4. Taking more than accumulated sick leave during the 1973-74 school term."

Because, at the time of the meeting, plaintiff was then in her second consecutive probationary year of employment with the District, section 24—11 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—11) was applicable to this employment relationship. The section provided that a

teacher in her situation would, at the end of the school term, enter into contractual continued service "unless given written notice of dismissal stating the specific reason therefor, * * * at least 60 days before the end of such period." Timely notice of the school board's action was sent to plaintiff. The theory of the instant complaint before the FEPC was that the District's action in not renewing her contract violated section 3(d) of the Fair Employment Practices Act because it was a discriminating act taken against her for having, in good faith, made a prior charge against ·the District.

■■ The FEPC order dismissing plaintiff's petition was based upon findings of the administrative judge who heard the evidence. He found that retaliation was not a factor in the board's failure to renew her contract but that it had resulted from (a) "her poor work attitude towards her supervisory staff" and fellow faculty members, and (b) her lack of cooperation "and its detrimental influence on the school as a whole." The judge found that her conduct was "not warranted as a response to any conduct of the School Board." The parties do not dispute that on review, factual determinations by the FEPC must be accepted by us unless they are contrary to the manifest weight of the evidence. We have so held in *Springfield-Sangamon County Regional Plan Com. v. Fair Employment Practices Com.* (1976), 45 Ill. App. 3d 116, 359 N.E.2d 174, *rev'd in part on other grounds* (1978), 71 Ill. 2d 61, 373 N.E.2d 1301; see also *Northern Illinois University v. Fair Employment Practices Com.* (1978), 58 Ill. App. 3d 992, 374 N.E.2d 748; *Montgomery Ward & Co. v. Fair Employment Practices Com.* (1977), 49 Ill. App. 3d 796, 365 N.E.2d 535; *A. P. Green Services Division v. Fair Employment Practices Com.* (1974), 19 Ill. App. 3d 875, 312 N.E.2d 314; *cf. School District No. 175 v. Illinois Fair Employment Practices Com.* (1978), 57 Ill. App. 3d 979, 373 N.E.2d 447.

Plaintiff and FEPC assert that in a case brought for retaliatory discharge under section 3 of the Fair Employment Practices Act, the employee may establish a prima facie case by making proof in a manner substantially as follows: (1) the employee is a member of a group protected by the Act, (2) the employee has filed a previous charge under the Act or engaged in other activity protected by the Act, (3) the employer was aware of the charges or activity, (4) the employee was discharged from employment, and (5) the discharge followed within such a short period of time that retaliatory motivation can be inferred. Under this theory, if the foregoing are established, the employer is given an opportunity to show some legitimate reason for terminating the employment, and then the employee is given an opportunity to rebut the claimed justification. This theory originated in cases concerning racial discrimination in hiring. (*McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817; *A. P. Green Services Division.*)

As applied in those cases, the first premise was that the complainant be a member of a racial minority and that the complainant be rejected for employment in a job for which he was qualified. If that rule be adapted to cases such as the instant one, a prima facie case of retaliatory discharge is made every time an employee's employment is terminated shortly after that employee has filed a complaint with FEPC and notice of the filing is given to the employer.

However, we need not decide whether to approve the stated theory in full flower in order to conclude that the FEPC determination here was contrary to the manifest weight of the evidence.

The short time lag between the filing of plaintiff's original complaint with FEPC on January 21, 1975, and the board's action on March 17, 1975, was circumstantial evidence creating some inference of retaliation, but was partially explained by the fact that the board would have been required to determine in the spring of 1975 whether it wished plaintiff to obtain tenure. Because of the 60-day requirement of section 24—11 of the School Code, the March 17 meeting would have been a logical time to make that determination. More probative of plaintiff's position was evidence that at the same meeting, the board (1) took action as to Betty Kinser, also a nontenured teacher, similar to that taken in regard to plaintiff, and (2) ordered letters of "remediation" issued as to two other female teachers who were tenured. Issuance of letters of "remediation" was the initial requirement to remove a teacher for cause under section 24—12 of the School Code. (Ill. Rev. Stat. 1973, ch. 122, par. 24—12.) All of the four teachers had been involved in the grievance dispute. No further proceedings were taken as to the tenured teachers.

Betty Kinser had also filed a claim with FEPC alleging retaliatory discharge. Her claim was heard together with plaintiff's, and FEPC had found that she had been discharged in retaliation for her participation in the dispute. Similar retaliatory conduct by an employer in dealing with another person involved in the same dispute has been deemed to be relevant in deciding whether retaliation motivated a plaintiff's discharge (*Mead v. United States Fidelity & Guaranty Co.* (D. Minn. 1977), 442 F. Supp. 114, 131). Taken together, all of the foregoing circumstances imply that the District's decision not to renew plaintiff's contract was based upon her involvement in the dispute.

The evidence concerning plaintiff's conduct came mostly from people biased in one way or another. The testimony relied upon by the School District to support the FEPC decision came from the District's superintendent and high school principal and two of the District's teachers. The principal and superintendent testified that various teachers had complained to them about plaintiff. The superintendent indicated that four of them had said they were unable to work with her. Neither

witness was able to be specific as to the nature of complaints or as to those complaining. One teacher testified to making several attempts to talk with plaintiff but said that plaintiff turned her head and walked away. The same witness testified that plaintiff made faces when male teachers entered the lounge. Another teacher stated that she saw plaintiff spending a good deal of time away from her classes talking with other teachers.

The District's faculty was small in number and the adversary atmosphere inherent in disputes of this nature undoubtedly created tension. Teachers bringing the grievance likely talked more to each other than with teachers in disagreement with them or those who were somewhat neutral. Some complaint was apparently made by other teachers that the grievants were unduly secretive, but this was explained by provisions of the adopted grievance procedure which stated that the parties would not make public statements about the grievance.

The members of the governing board of the District likely became upset because of the manner in which they first heard of the filing of the original FEPC complaint. Attorneys for those filing the grievance and the District had been in discussion concerning the procedure to be followed. Without informing their own attorney or the board, the grievants hired new counsel who then filed the FEPC complaint. The board members first heard about this sometime later when a media announcement was made by a district representative of the Illinois Education Association. The rapidity with which new counsel acted in filing the complaints was necessary because section 8 of the Fair Employment Practices Act (Ill. Rev. Stat. 1975, ch. 48, par. 858) required that a complaint to initiate a proceeding under the Act must be filed within 180 days of the commission of the act alleged to be unfair. Thus, filing by mid-January 1975 was necessary to reach acts occurring as late as early July 1974.

We view the conduct of the parties within the foregoing background. Evidence of professional failings upon the part of plaintiff was meager. Some evidence of her hostility to other teachers was shown but no showing was made that this concerned those teachers she was required to work with most closely. The parties do not dispute that her teaching was good. Evidence was presented that a majority of the teachers had signed a petition stating that she was cooperative. Coupling this evidence with the evidence of the concurrent action taken by the District against the four disputant teachers we deem it clearly evident that plaintiff's contract was not renewed because of her filing of the FEPC complaint and her related conduct in claiming unfair treatment. Accordingly, we find the FEPC decision to be contrary to the manifest weight of the evidence.

The order of the FEPC dismissing plaintiff's complaint and the judgment of the circuit court of McLean County are reversed. The case is remanded to the FEPC with directions to proceed in accordance with this

opinion, granting plaintiff such relief as that commission may determine to be proper.

Reversed and remanded.

MILLS, P. J., concurs.

Mr. JUSTICE TRAPP, dissenting:

The administrative law judge who heard all of the evidence found that defendant had produced evidence disclosing "a nondiscriminatory legitimate reason for not retaining Alexander, which Alexander was not able to establish as pretextual in nature." Specifically stated were findings concerning "openly negative behavior" toward the administration and fellow employees and behavior deemed to be disruptive as to the school faculty and indirectly upon the students. He thereupon recommended dismissal of the complaint.

The written order of the Fair Employment Practices Commission recites that the Commission had reviewed the record, received written briefs and heard oral argument and that it found that the administrative law judge's findings of fact are not contrary to the manifest weight of the evidence, and that the findings of fact and law are correct. It thereupon affirmed the findings and conclusions in full.

Upon administrative review, the circuit court found that the order and decision of the Commission was not contrary to the manifest weight of the evidence or to the law. Having reviewed the record, I would affirm that finding.