Moss-American, Inc., Plaintiff-Appellee, *v.* The Illinois Fair Employment Practices Commission *et al.*, Defendants-Appellants.

(No. 73-149;

Fifth District—September 24, 1974.

William J. Scott, Attorney General, of Chicago and Cohn, Carr, Korein, Kunin and Brennan, of East St. Louis (Paul J. Bargiel, A. Zola Groves, and Robert G. Epsteen, Assistant Attorneys General, and Rex Carr, of counsel), for appellants.

George S. Hecker, of Bryan, Cave, McPheeters & McRoberts, of St. Louis, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of St. Clair County, dismissing a complaint of the appellant, the Fair Employment Practices Commission of the State of Illinois, which had been issued by it against the appellee, Moss-American, Inc., under the Illinois Fair Employment Practices Act (Ill. Rev. Stat. 1967, ch. 48, par. 858). The complaint had been issued on behalf of Joe W. Fenton and Kenneth Baker, employees of Moss-American, who claimed that Moss-American had been guilty of an unfair employment practice in violation of the Illinois Fair Employment Practices Act.

The trial court's order of dismissal of February 28, 1973, was based upon the grounds that: (1) the Commission failed to dismiss the complaint of appellant Baker in accordance with section 8 of the Act, (2) the decision of the Commission was arbitrary and unreasonable, (3) the Commission and the circuit court are bound by prior arbitration

decisions on the matters of seniority, etc., as alleged in the complaint, and (4) the Commission had no jurisdiction to hear the complaint. The specific order of the Circuit Court fails to mention the disposition of Fenton's complaint. Neither appellee nor appellants have noted this in their briefs, and all parties take the position that the circuit court by its revised order dismissed the complaints filed on behalf of Baker *and* Fenton.

The three issues to be resolved are:

    (1) Did the Fair Employment Practices Commission of Illinois have jurisdiction to hear the complaints of appellants, Joe W. Fenton and Kenneth Baker, under section 8 of the Fair Employment Practices Act of Illinois (Ill. Rev. Stat. 1967, ch. 48, sec. 858)?

    (2) Does arbitration of a grievance relative to seniority rights under a collective bargaining agreement deprive the Fair Employment Practices Commission of jurisdiction to determine charges of racial discrimination filed with it?

    (3) Was the decision of the Fair Employment Practices Commission of Illinois arbitrary and unreasonable?

After a brief history of the case, we will treat the issues in the order presented. Appellants Fenton and Baker were black employees working as laborers by appellee since May, 1966, and January, 1966, respectively. A vacancy in a job classification "mechanic" occurred in March, 1968, and both appellants bid for the position. However, they lost to the only other applicant, Walter Schlemmer, a white laborer. The appellants immediately filed grievances through their union representative, charging that, since each of them had been employed longer than Schlemmer, each therefore had greater "seniority" than Schlemmer. The grievance was arbitrated in accordance with the collective bargaining provision between the appellee and District 50 of the United Mine Workers of America. The arbitrator found that the company did not violate the seniority provisions of the collective bargaining agreement and that there was no evidence that the management acted in an arbitrary, capricious or discriminatory manner.

On May 6, 1968, the Springfield office of the Illinois Fair Employment Practices Commission (hereinafter referred to as the Commission) received on printed forms provided by the United States Government certain documents in duplicate entitled "Charge of Discrimination" signed under oath by Fenton and Baker. The documents so received contained on their face printed instructions to mail them to the regional office of the United States Equal Employment Opportunity Commission, a Federal agency. The Springfield office of the Commission, a State agency,

forwarded one copy of each document to the Chicago regional office of the United States Equal Employment Opportunity Commission and retained the duplicate copies of each document and assigned them numbers 68-S-15 (Fenton) and 68-S-16 (Baker), respectively, on May 6, 1968. On May 13, 1968, a copy of each document which had been so forwarded to the Chicago regional office of the United States Equal Employment Opportunity Commission was returned to the Springfield office of the Commission by the Chicago office pursuant to the Civil Rights Act of 1964 (42 U.S.C.A., § 2000E5(b), (c) (1974). Upon receipt of these documents, which contained charges of racial discrimination against appellee, the Springfield office re-docketed the documents as 68-SF-18 (Fenton) and 68-SF-19 (Baker), respectively. The Commission on October 29, 1968, ordered the charges set forth in the documents originally received by it on May 6, 1968, 68-S-15 (Fenton) and 68-S-16 (Baker), dismissed for lack of jurisdiction. On November 8, 1968, complaints were issued and filed by the Commission on charge numbers 68-SF-18 (Fenton) and 68-SF-19 (Baker) against Moss-American. On August 8, 1969, the Honorable Prentice A. Marshall, hearing examiner for the Commission, after a lengthy 2-day hearing, made his report and recommended an order sustaining the complaints of Fenton and Baker. The hearing examiner's recommended order included the following:

"(1) that Moss-American cease and desist from discrimination against its employees because of their race or color in affording them opportunities to seek promotion in employment with respondent;

(2) that Baker and Fenton each receive as compensatory back wage award that amount each would have received had he been promoted to the job classification of mechanic on March 27, 1968, and that thereafter each be compensated by Moss-American at the mechanic rate of pay until such time as employment of each is terminated or until each is afforded a non-discriminatory opportunity to bid for the position of mechanic pursuant to the collective bargaining agreement between Moss-American and District 50 of the United Mine Workers."

The Commission, after considering appellee's petition for review and Fenton's and Baker's rejoinder for petition for review, affirmed the hearing examiner's report and adopted his recommended order.

Appellee instituted an administrative review action in the Circuit Court of St. Clair County, and appellants filed their answers thereto. On November 13, 1972, the Circuit Court entered an order finding that the Commission had no jurisdiction to hear the complaints of the ap-

pellants on the ground that prior arbitration of the matter constituted an election of remedies which was binding on the appellants. On February 27, 1973, the Circuit Court of St. Clair County entered its revised order dismissing the appellants' complaints.

The appellee contends that the Illinois Fair Employment Practices Commission lacked subject-matter jurisdiction over the complaints of the appellants for the reason its Commission failed to issue and serve the complaints within 180 days from the date on which appellants' charges of unfair employment practices were properly filed as required by section 8(c) of the Illinois Fair Employment Practices Act, which provides in part:

> "(c) Whenever a charge of an unfair employment practice has been properly filed, the Commission, within 180 days thereof, shall either issue and serve a complaint in the manner and form set forth in this Section or shall order that no complaint be issued. Any such order shall be duly served upon both the complainant and the respondent." (Ill. Rev. Stat. 1967, ch. 48, par. 858(c).)

It should be noted that the 180-day period provided for in section 8(c) would have expired on November 2, 1968, if such period began to run as of May 6, 1968. However, the 180-day period would not have expired until November 9, 1968, if such 180-day period did not begin to run until May 13, 1968. It must be remembered that the complaints which are the subject of this case (68-SF-18 and 68-SF-19) were issued by the Commission on November 8, 1968. Appellee contends that the 180-day period commenced on May 6, 1968, and expired on November 2, 1968. Appellants contend on the other hand that the period expired on November 9, 1968, one day after the complaints were issued by the Commission. The most important question concerns when the appellants' charges were properly filed. The Commission determined that the return of duplicate copies of the charges from the United States Equal Employment Opportunity Commission constitute a proper filing before the Commission on May 13, 1968. The hearing examiner took the position that the Illinois Commission did not have jurisdiction over charges sent directly to it by the complainants on Federal forms but could assume jurisdiction over the matter when the Federal agency referred copies of the charges to the Springfield office. It should also be noted that in the first instance the determination of a proper filing is to be made by the Commission.

■■■ Throughout its argument about the 180-day period as set forth in Section 8(c) of the 1967 Fair Employment Practices Act, appellee takes the position that the 180-day period is a jurisdictional requirement.

This is erroneous. If there is a jurisdictional statute of limitations in proceedings before the Commission, it should be the time period that runs between the act complained of and the date on which the charges are filed before the Commission by the person. To hold that an aggrieved party who timely files his charges with the Commission with regard to discrimination of employment will be barred from a remedy simply because the Commission fails to act timely with regard to his charges is tantamount to throwing the employed citizenry of this state to the wolves of bureaucratic indifference. The Commission was created to protect the fundamental and substantial employment rights of the citizenry with regard to non-discriminatory opportunity in employment. The Commission and the laws which created the laws of the Commission did not contemplate that the Commission's administrative errors would (or could) prejudice such substantial statutory rights. Certainly there is nothing in the 1967 statute to suggest that the rights of the aggrieved party, once he has filed his charge with the Commission, can be forfeited by the Commission's failure to take action. Appellants' counsel correctly states the general rule that where a statute prescribes a time within which a public officer is to perform official acts affecting the rights of others, the time prescribed is to be considered directory unless from the nature of the act the designation of time must be considered a limitation on the power of the officer. *Whalin v. City of Macomb* (1875), 76 Ill. 49.

The basic controversy between the appellee and the appellants with regard to arbitration focuses upon whether the arbitration was "binding" on the Commission. This issue was finally laid to rest by the decision of the United States Supreme Court in *Alexander v. Gardner-Denver Co.* (1974), 415 U.S. 36, 39 L.Ed.2d 147, 94 S.Ct. 1011. In the *Alexander* case, the petitioner, a black employee having been fired, filed a grievance under the collective-bargaining agreement between the company and his union. The arbitrator ruled that petitioner's discharge was for cause and not as a result of racial discrimination. The petitioner also filed a complaint with the Colorado Equal Employment Opportunity Commission, and it determined that there was no reasonable ground to believe that a violation of the Civil Rights Act of 1964 had occurred. Petitioner then instituted an action in the Federal District Court. The company's motion for summary judgment was sustained by the district court on the ground that the petitioner was bound by the prior decision in arbitration and had no right to sue under title VII of the Civil Rights Act of 1964. The Court of Appeals for the Tenth Circuit affirmed. The United States Supreme Court, however, reversed on the ground that petitioner's statutory right to trial under title VII was not foreclosed by the prior admission

of his claim to final arbitration under the non-discrimination clause of collective bargaining agreement. The United States Supreme Court unanimously held:

> "In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. *The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.* And certainly no inconsistency results from permitting both rights to be enforced in their respective appropriate forms. The resulting scheme is somewhat analogous to the procedure under the National Labor Relations Act, as amended [29 U.S.C. § 151 *et seq.*], where disputed transactions may implicate both contractual and statutory rights. Where the statutory right underlying a particular claim may not be abridged by contractual agreement, the Court has recognized that consideration of the claim by the arbitrator as a contractual dispute under the collective-bargaining agreement does not preclude subsequent consideration of the claim by the National Labor Relations Board as an unfair labor practice charge or as a petition for clarification of the union's representation certificate under the Act." (Emphasis added.) (415 U.S. at 49-50, 39 L.Ed. 2d at 159, 94 S.Ct. at 1020-1021.)

Moreover, the United States Supreme Court found that an individual employee does not waive his individual right by reason of membership in a union which is a party to a collective bargaining agreement:

> "To begin, we think it clear that there can be no prospective waiver of an employee's rights under Title VII. It is true, of course, that a union may waive certain statutory rights related to collective activity, such as the right to strike. * * * Title VII, on the other hand, stands on plainly different grounds. It concerns not majoritarian processes, but an individual's right to equal employment opportunities. Title VII's strictures are absolute and represent a Congressional command that each employee be free from discriminatory practice." *Alexander v. Gardner-Denver Co.*, 415 U.S. at 51, 39 L.Ed.2d at 160, 94 S.Ct. at 1021.

The comparison of the instant case to the *Alexander* case is obvious. The manifest intention of the Fair Employment Practices Act of Illinois is to assure that individuals would be afforded equal employment opportunity without discrimination because of race, color, religion, na-

tional origin or ancestry. (Ill. Rev. Stat. 1967, ch. 48, par. 851.) The arbitration in the instant case cannot preclude an individual from the statutory rights conferred upon him by the Fair Employment Practices Act of Illinois. Like title VII of the Civil Rights Act of 1964, the Illinois Fair Employment Practices Act provides a means of redress for an aggrieved person complaining of an unfair employment practice based upon racial discrimination. An arbitrator, whose duty is to interpret and apply the provisions of the collective bargaining agreement, cannot limit, prevent or "bind" an individual from exercising his statutory rights under the Fair Employment Practices Act. This is especially true in the instant case where the arbitrator was not interpreting or construing a non-discrimination clause in a collection bargaining agreement and did not mention the words "racial discrimination" in his report.

Under section 8(f) of the Act (Ill. Rev. Stat. 1967, ch. 48, par. 858 (f)), the hearing examiner determines whether the respondent has been engaged or is engaging in an unfair employment practice with respect to the complaint based upon a preponderance of the evidence. It is not the job of the reviewing court to re-weigh the evidence presented but to ascertain if the Commission's decision is supported by a preponderance of the evidence. (*Chicago Transit Authority v. Fair Employment Practices Commission* (1968), 103 Ill.App.2d 329.) It should be noted that the Circuit Court of St. Clair County found that the decision of the Commission in this case was arbitrary and unreasonable.

Many of the facts found by the hearing examiner are not in dispute by the appellants and appellee in this case. The inferences to be drawn from such facts are very much in dispute by the parties.

The hearing examiner found that Fenton, Baker and Schlemmer had been the only bidders on the mechanic job that opened up at Moss-American. The hearing examiner concluded:

"The opportunities afforded Baker and Fenton were limited to brief, casual conversations with them during the course of their work in the yard. Such was not the case with respect to Schlemmer. Not only was he interviewed by both Ferguson and McDaniel, separately, but Ferguson pursued the matter in behalf of Schlemmer by contacting Chartrand (former employer of Schlemmer) and requesting that Chartrand write a letter of recommendation for Schlemmer. Comparable efforts were not made in behalf of Baker or Fenton. Accordingly, the Hearing Examiner is persuaded by a clear preponderance of the evidence that Schlemmer was extended preferential treatment with respect to the prosecution of his bid."

At the outset it is important to note that, in the proceedings before the hearing examiner, Fenton and Baker testified while Schlemmer did

not testify. While appellee's Director of Personnel McDaniel and Assistant Plant Superintendent Ferguson testified that they talked to Baker on the switch tie yard with regard to his bid, Baker denied that the conversation occurred. Likewise, Fenton denied that Ferguson and McDaniel interviewed him, even though Ferguson and McDaniel testified that they spoke with Fenton while Fenton was working on a moving locomotive. It would appear from the finding quoted above that the hearing examiner believed that Ferguson and McDaniel had spoken to Fenton and Baker.

The job application of Schlemmer reflected mechanical experience while the applications of Fenton and Baker did not. Ferguson testified that he had spoken to Chartrand, Schlemmer's former employer, prior to the bidding and after the bidding. Ferguson and McDaniel stated they had spoken to Schlemmer separately and he had informed them of his prior mechanical experience. Ferguson discussed with Schlemmer's former employer Chartrand his personal qualifications and qualities and requested that Chartrand confirm this recommendation by letter. Ferguson made arrangements for Schlemmer to pick up the letter and Schlemmer delivered the letter to Ferguson on or about March 26, 1968.

The hearing examiner was persuaded that Schlemmer was afforded preferential treatment and that the motivation for such treatment was racial. McDaniel testified that Mr. Credill Minter, the union president, had on several occasions accused the company of racial discrimination and had threatened to file charges. The substance of McDaniel's testimony is as follows:

"Question: You said you suspected there would be charges, what was the basis of that?

Answer: [Mr. McDaniel] Mr. Minter had mentioned on several occasions that we were discriminating and if we did award a job to a white when a black had a bid on it he would bring charges of discrimination.

Question: When was that?

Answer: One time, it was maybe in the labor-management meeting, it was in the Winter of 67-68.

Question: Were those charges made before this job was posted for bids?

Answer: Yes, I believe they were.

Question: Did that statement in any way effect your determination of the best-qualified bidder in this instance?

Answer: *It made us want to be more sure of ourselves, absolutely sure of ourselves before we made our decision.*

Question: *On that basis* it was your judgment Mr. Schlemmer

was the best qualified of the qualified bidders regardless of race? Answer: Yes, sir." (Emphasis added.)

Ferguson, McDaniel and Studebaker, the general superintendent, were aware of Minter's threats when they reviewed the qualifications of the three employees involved. Based upon McDaniel's statement, the hearing examiner found as follows:

"In order to make sure of themselves, McDaniel and Ferguson investigated Schlemmer's bid with greater intensity than they did the bids of either Baker or Fenton. Indeed, they pursued Schlemmer's bid to the end that he emerged as the best qualified bidder, and the motivation for those extra efforts was the racial difference between Schlemmer on the one hand and Baker and Fenton on the other. When Ferguson and McDaniel were finished there was no doubt that, on paper, the white man [Schlemmer] was better qualified than either of the Negro men [Baker and Fenton]."

As set forth in appellee's brief, it feels that before any finding of racial discrimination could be made there had to be a preliminary finding that either Fenton or Baker was better qualified than Schlemmer for the mechanic job. This is the pivotpoint of the case. The hearing examiner was not concerned about whether Schlemmer was or was not better qualified for the job. But rather, what he was concerned about—indeed, what the Commission is empowered to be concerned about—is whether appellants were afforded a non-discriminatory opportunity to bid on the mechanic job without regard to their race. Clearly, Minter's threat to bring charges of racial discrimination affected appellee's determination of who was the best qualified bidder for the mechanic job. It appears that extra effort was made by the company to determine and document Schlemmer's qualifications—documentation was done, not merely for the purpose of determining who was the best qualified, but for the purpose of substantiating and justifying the award of the job to Schlemmer. Therefore, the Commission was not arbitrary and unreasonable in concluding that by a preponderance of the evidence appellee had knowingly afforded Schlemmer a superior or preferential opportunity to prosecute his bid, and the appellants were not afforded such opportunity.

The issue in the present case goes beyond the question of the black employees' qualifications as mechanics. Rather, the question was whether the overall bidding procedure was discriminatory against appellants, depriving them of an equal opportunity for promotion. The past employment record of the white laborer was examined more than once while those of the black employees were not examined. The white employee was interviewed more than once in circumstances more conducive to eliciting qualifications for promotion, while the interviews with the black em-

ployees, if they occurred at all, were conducted while the employees were on the job. The white employee was even given assistance by the company in the bidding process, if only to protect the company's legitimate interests. The Commission examined these differences and determined that, taken as a series of events and part of one transaction, they established a pattern of discrimination against the petitioners. This is supported by a preponderance of the evidence.

■■ In reviewing an order of the Commission, the preponderance of the evidence standard must be adopted as required by the Fair Employment Practices Act. "[This is the only means of keeping] the agency within the jurisdictional * * * bounds guaranteed by the Constitution and statutes." (*Chicago Transit Authority v. Fair Employment Practices Commission,* 103 Ill.App.2d 329, 339.) In *Motorola, Inc. v. Illinois Fair Employment Practices Commission,* 34 Ill.2d 266, the court rejected the proposed review standard "supported by competent evidence from which reasonable men could draw an inference * * *." (34 Ill.2d at 271.) However, the court in *Motorola* stated that it agreed with the circuit court that "the Commission must be allowed reasonable latitude in drawing inferences of discrimination from competent circumstantial evidence." (34 Ill.2d at 275.) The finding of the court in *Motorola* was that "when all evidence in this case is considered, some suspicion might reasonably remain that the plaintiff had falsely recorded petitioner's test score. Under the Fair Employment Practices Act, however, that suspicion is not enough. The Act provides that a determination sustaining a complaint shall be based upon a preponderance of the evidence." (34 Ill.2d at 282.) By a preponderance of the evidence it is meant the greater weight of the evidence, not necessarily in numbers of witnesses, but in merit and worth that which has more evidence for it than against it is said to be proven by a preponderance. Preponderance of the evidence is sufficient if it inclines an impartial and reasonable mind to one side rather than the other. *New York Life Insurance Co. v. Jennings,* 61 Ga. 577, 6 S.E.2d 431.

■■ Consequently, it can clearly be determined that the Commission had jurisdiction to hear the complaints of the appellants, Fenton and Baker, and also that the Commission and trial court were not bound by a prior decision of an arbitrator on the matters of seniority. Finally, the Commission was not arbitrary and unreasonable in concluding that, by the preponderance of the evidence, the appellee had knowingly afforded Schlemmer a superior or preferential opportunity to prosecute his bid, and that appellants were not afforded such opportunity, this being in violation of the Illinois Fair Employment Practices Act.

The judgment of the trial court of St. Clair County setting aside the

finding of the Illinois Fair Employment Practices Commission is reversed and the order of the Commission of May 22, 1970, adopting the recommended order of the hearing examiner is reinstated.

Judgment reversed.

G. MORAN, P. J., and CREBS, J., concur.