K MART CORPORATION, Plaintiff-Appellee, v. ILLINOIS HUMAN RIGHTS COMMISSION *et al.*, Defendants-Appellants.

Fourth District   No. 4—84—0236

Opinion filed December 28, 1984.

Neil F. Hartigan, Attorney General, of Springfield (Imelda R. Terrazino, Assistant Attorney General, of Chicago, of counsel), for appellant Human Rights Commission.

Charles J. Speta, of Springfield, for appellant Vickie Crider.

Hutmacher, Rapp & Ortbal, P.C., of Quincy (James A. Rapp and Thomas J. Ortbal, of counsel), for appellee.

JUSTICE MILLS delivered the opinion of the court:

Issue: Employment discrimination because of race.

A complaint of civil rights violation was filed with the Human Rights Commission, alleging that K mart Corporation (K Mart) denied employment to Vickie Crider because she was black. The administrative law judge found in favor of Crider, and his findings were adopted by the Commission. The Commission ordered K Mart to employ Crider and pay her a sum equal to any lost wages resulting from the discriminatory action. K Mart appealed to the circuit court of Adams County, which reversed the Commission's order. Crider and the Commission (appellants) appeal from the judgment of the circuit court.

We affirm.

FACTS

A tedious recitation of the prolix facts is required.

At the hearing before the administrative law judge, evidence showed that Crider had been employed as a seasonal employee with K Mart during the Christmas seasons of 1978 and 1979. After the Christmas season of 1979, Crider, along with 12 other seasonal employees, was released because of a reduction in work force. Seven of the released employees expressed an interest in a regular position at the store if any became available during 1980. Among those expressing an interest in regular employment were Crider, Lynn Holbrook, and Ann Witsken.

In March 1980, two part-time cashier positions became available. Lorraine Bell, the personnel manager of K Mart, testified that Crider, Holbrook, and Witsken were equally qualified for these positions. Holbrook and Witsken were hired because Bell "needed someone for part-time, nights, weekends, and that is exactly what they wanted." Bell testified she hired Witsken and Holbrook on the basis of their preference for part-time work. She believed Crider would take a part-time position but preferred full-time work. Bell stated, however, that Crider never specifically told her that she preferred full-time employ-

ment to part-time employment.

Job applications of Crider, Holbrook, and Witsken were submitted into the record. Holbrook and Witsken filled out job application forms on January 3, 1980. The forms contained a section entitled *Employment Interest and Skills*. Under this title was the phrase "work schedule desired" and to the right of this phrase were seven boxes labeled "full-time," "part-time," "days," "evenings," "Saturday," "Sunday," and "seasonal." The only box marked on Holbrook's application was the box labeled "part-time." Witsken marked the boxes labeled "part-time," "evening," "Saturday," "Sunday," and "seasonal." Both Holbrook and Witsken were white females under the age of 18 and were attending high school at the time.

Crider filled out an application form on February 14, 1980. In the "work schedule desired" section of the form she marked the boxes labeled "full-time," "part-time," "days," "evenings," "Saturday," and "Sunday." Crider testified that she had met with Bell to inquire about a permanent position with K Mart on February 14, 1980. She stated that Bell told her she need not fill out an application form because Crider already had an application on file. At the meeting, Bell referred Crider to another K Mart store which was hiring at the time. The application which Crider completed on February 14 was apparently an application for this other store.

Crider was questioned at the hearing with regard to her preference in a work schedule after her release from K Mart in 1979. She states, "I didn't have no job, so I didn't care if it was full-time or part-time." She further testified that if a full-time job had been available, she would have preferred that to a part-time job, and if only a part-time job was available, she would have preferred a part-time job to no job.

At the hearing, Crider's attorney introduced into evidence the separation reports which were made on Crider, Holbrook, and Witsken when the three were released after the Christmas season of 1979. One of the questions on the report stated: "Would you re-employ? Yes_____ No_____." Holbrook's and Witsken's reports have a checkmark after "Yes." In Crider's separation report, there is no checkmark after either "Yes" or "No." Each report is signed by the store manager, by Lorraine Bell, and by the respective employee. Bell could not explain at the hearing why she had not answered the reemployment question on Crider's separation report.

Additional testimony at the hearing revealed that in October 1980, approximately seven months after K Mart hired Holbrook and Witsken, it hired three more part-time employees: Cheryl Dabney,

Toni Fletcher, and Joyce Frericks. Fletcher and Dabney were under 18 years of age and were in high school. Dabney and Frericks were white, and Fletcher was black.

Dabney and Fletcher had filled out job applications in September and October 1980. In the "work schedule desired" portion of the application, Dabney had marked "part-time," "days," "evenings," "Saturday," and "Sunday." Fletcher had marked the boxes labeled "part-time," "evenings," "Saturday," and "Sunday." She also indicated that she desired 42 hours per week.

The application of the other employee, Joyce Frericks, had checkmarks in both the full-time and part-time boxes. When Bell was asked why Frericks was hired for a part-time position even though she had marked full-time and part-time on the application, Bell responded: "Because she had worked for us also at one time." Bell had testified that she preferred to hire people with previous service at K Mart.

## OPINION

■■ A reviewing court should not overturn a decision of the Human Rights Commission unless that decision is contrary to the manifest weight of the evidence. (*Burnham City Hospital v. Human Rights Com.* (1984), 126 Ill. App. 3d 999, 467 N.E.2d 635.) In the present case, the circuit court found that Crider had established a *prima facie* case of discrimination but failed to prove that K Mart's reason for not hiring her was a pretext for discrimination.

■■■ When a complainant makes a *prima facie* case and the employer then articulates a legitimate business reason for its action, the burden is upon the complainant to prove that the employer intentionally discriminated against the complainant. (See *Burnham City Hospital v. Human Rights Com.* (1984), 126 Ill. App. 3d 999, 467 N.E.2d 635.) Intentional discrimination may be proved directly, through affirmative evidence, that race played an impermissible role in the employer's decision, or indirectly, through proof that the employer's proffered explanation is not to be believed. *Burnham City Hospital v. Human Rights Com.* (1984), 126 Ill. App. 3d 999, 467 N.E.2d 635; *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089; *Lincoln v. Board of Regents* (11th Cir. 1983), 697 F.2d 928.

K Mart's personnel manager, Bell, testified that the reason Holbrook and Witsken were hired and Crider was not was because Holbrook and Witsken desired—and were only available for—part-time work, whereas Crider desired and was available for part-time or *full-time* work. Bell also testified as follows:

"Q. Is it also not a principle of good employment practices *** to hire persons who will remain with the employing organization for as long as the employing organization has need of them?

A. [BELL]: I think, basically.

\* \* \*

Q. And is it not a fact that employees who are not likely to remain more than a short time are not desirable?

A. I wouldn't say they weren't desirable.

\* \* \*

Q. What I am referring to is *** somebody who will come passing through town or someone who is just in need of a job, for a couple of weeks, until they can find something better?

A. (Nodding negatively.) That is not too desirable."

The rationale for seeking applicants who only desire and are only available for part-time work is readily apparent. Such an applicant is less likely to continue seeking employment after they accept part-time work. On the other hand, one who desires and is available for full-time work is likely to continue their employment search after they accept a part-time position. An employer has a legitimate business interest in minimizing the training time, supervision, and cost associated with the rate of turnover in part-time positions.

■ Bell knew that Holbrook and Witsken were high school students who were only available for part-time work. Neither girl had marked the "full-time" box on the application form filled out in January. Crider, on the other hand, sought full-time employment. In her application form of February 14, 1980, she had checked "full-time" as well as "part-time" in the work schedule desired portion of the application. Bell testified that she knew Crider was seeking full-time employment. Crider herself testified that, after she was released from seasonal employment in 1979, she would have preferred full-time work to part-time work.

■ With evidence of a legitimate business reason for K Mart's action, the burden shifted to Crider to prove intentional discrimination by K Mart. Virtually no direct evidence of a discriminatory intent was introduced. As for indirect evidence tending to undermine the credibility of K Mart's articulated reason, we find it unpersuasive.

Appellants first note Bell's testimony that Crider never told Bell she preferred full-time to part-time employment. This testimony would have been significant only if Crider's performance had been the basis for her rejection. However, as explained above, it was not Crider's preference for full-time or part-time work but rather, her desire

and availability for full-time employment that was the basis for her rejection.

Appellants attribute much significance to testimony by Bell that Crider was not given "serious consideration" for the part-time positions. It is argued that this establishes a discriminatory intent. K Mart maintains that the reason Crider was not given serious consideration was because she desired full-time employment. Bell's testimony is entirely consistent with the articulated reason for Crider's rejection. Since K Mart was seeking to fill part-time positions with applicants who only desired and were only available for part-time employment, only such applicants were given serious consideration.

Appellants also cite evidence that in October 1980 K Mart hired a white woman, Joyce Frericks, for a part-time position even though she had marked both the full-time and part-time boxes on her job application. This evidence would have a tendency to discredit K Mart's articulated reason for rejecting Crider, since it shows that K Mart hired a part-time employee who also desired full-time employment. However, Crider failed to introduce any evidence that, at the time Frericks was hired, K Mart rejected a qualified applicant who desired only part-time employment. Consequently, the hiring of Frericks may have been out of necessity. Moreover, Bell testified that Frericks was hired because she had prior employment experience with K Mart. Bell testified that she preferred to hire people who had previously worked at K Mart. Consequently, even if K Mart had disregarded Frericks' desire for full-time work, it could be explained on the basis that she had prior experience at K Mart. While Crider had prior experience at K Mart, so did Holbrook and Witsken. Therefore, K Mart's hiring of Frericks does not undermine the credibility of its articulated reason for rejecting Crider.

Appellants next cite to the applications of Cheryl Dabney and Toni Fletcher as evidence that K Mart did not consider the applicant's desire for full-time work in hiring part-time employees. Dabney and Fletcher were hired as part-time employees in the fall of 1980. Both girls marked only the part-time boxes on their job applications, but Dabney indicated on her application that she wanted as many hours as she could get and Fletcher indicated that she desired 42 hours per week. Appellants argue that both of these girls, in reality, desired full-time employment and yet were hired for part-time work.

Bell testified that both of these girls were in high school and that most high school students applying for part-time jobs did not appreciate the nature of part-time work. The fact that these two young women were in high school and had marked only the "part-time"

boxes on their application forms renders it highly unlikely that they either desired, or would have been available for, full-time employment.

Appellants next argue that the separation reports of Crider, Holbrook, and Witsken constitute evidence of Lorraine Bell's discriminatory intent. On the reports of Holbrook and Witsken, Bell had checked "Yes" in response to the reemployment question, whereas she had not checked either "Yes" or "No" on Crider's separation report. Bell could not explain at the hearing why she failed to answer this question. K Mart argues on appeal that the failure was due to an oversight.

At the least, the reports would suggest that less care was given to the completion of Crider's separation report than to Holbrook's and Witsken's. Beyond this, appellants do not explain how the failure to complete this form raises an inference of discriminatory intent on the part of Lorraine Bell. Any discriminatory intent suggested by Bell's failure to answer this question would be inconsistent with the fact that Bell had hired Crider for seasonal employment in 1978 and 1979, with the reemployment in 1979 occurring only three months before the alleged discriminatory practice. Moreover, Crider had signed the separation report and apparently had no objection to Bell's failure to answer the reemployment question.

The finding of the Human Rights Commission was against the manifest weight of the evidence.

The judgment of the circuit court of Adams County is affirmed.

Affirmed.

GREEN, P.J., and TRAPP, J., concur.