THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL L. DRAKE, Defendant-Appellant.

Second District   No. 84—395

Opinion filed March 6, 1985.

G. Joseph Weller and Manuel S. Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert Morrow, State's Attorney, of Geneva (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Paul L. Drake, pleaded guilty to burglary in the circuit court of Kane County and was sentenced to 12 months' probation and to pay costs and restitution. He later pleaded guilty to theft at a hearing on a petition to revoke his probation. His probation was extended by six months and he was sentenced to 90 days in the Kane County jail. A second petition to revoke his probation was filed alleging his commission of retail theft under $150 (Ill. Rev. Stat. 1983, ch. 38, par. 16A–3). Specifically, he was charged with the retail theft of 12 steel files of three different types from the Ace Hardware store in Elgin.

After a hearing on the petition, the defendant was found guilty of retail theft in violation of the terms of his probation and was sentenced to 30 months' probation with no credit for time served and to six months in the Kane County jail with credit for time served since March 2, 1984.

The defendant contends in this appeal that he was denied a fair revocation hearing because the court considered improper hearsay evidence, and that the State failed to prove by a preponderance of the evidence that he violated his probation.

Elgin police officer Mike Turner had stopped and was questioning two juvenile suspects on an unrelated incident at about 11 a.m. on October 19, 1983, in Elgin. He observed the defendant walking behind the Helm TV business at 201 National Street, saw him walk over to a win-

dow on the west side of the building and continue around to the rear of the building. When the defendant saw squad cars, he put something inside his jacket. Turner radioed Elgin police department Captain Copher to stop the defendant and check what was inside his coat. Turner testified he did not see the defendant bend down or pick anything up off the ground when he was near Helm TV.

Captain Copher testified he approached the defendant, asked him if he had anything in his coat, and that the defendant said no. The defendant opened his coat upon the officer's request, and the officer found 12 files therein. The files were not in a sack or package, and there was no sales receipt with the files, although the officer could not recall whether he asked the defendant if he had a sales receipt. When asked where he got the files, the defendant stated he found them on the ground behind Helm TV. Copher said there was no dirt or mud or snow "or anything" on the files. Copher testified each of the files had an "Ace" sticker on it, and that there are two Ace Hardware stores in Elgin. The one nearest the Helm TV store was the one on the east side of Elgin on North Spring and Kimball. The other store, the Lillian Street store, was located about 1¾ to 2 miles from the Helm TV store.

There was conflicting and contradictory testimony as to whether the defendant was "booked" at that time in the manner that term ordinarily implies, i.e., taken to the police station, fingerprinted, photographed, and so forth, or whether he was just asked for pertinent information such as his name, address, phone number and so forth at the scene. In either instance, the testimony was consistent on the point that the defendant was not held that day, but was released.

The manager of the Lillian Street Ace Hardware store on the west side of Elgin, Del Logston, testified Officer Turner arrived at the store on October 19 at about 3 p.m. and showed him some files. Files similar to the ones found on the defendant's person, not the actual files which were allegedly stolen (which had been replaced in the store inventory and subsequently sold), were presented at trial for demonstrative purposes. Over the defendant's hearsay objection, Logston testified he identified the 12 files Turner showed him as ones carried by that store by virtue of "our stock number and our store number and our Ace price tag on the files." He testified the store number was a distinctive one, No. 6319, as opposed to the North Spring and Kimball store, No. 49. Logston testified he proceeded to the file section of the store, and there he found three empty peg hooks. Logston testified there was an inventory conducted of that section of the tool department on Sunday, October 16, 1983. The normal procedure during inventory is to "put in the inventory book the quantity on hand and, if need be [to] order suf-

ficient quantity necessary to restock." Over the defendant's hearsay objection, Logston testified there was nothing in the October 16 inventory book about needing to order the three types of files that were kept on the three pegs found empty on October 19.

A store employee, Sheila Gutierrez, testified she saw the defendant in the store the morning of October 19, 1983, and saw him walk down several aisles, including the tool aisle where she was doing price changes. She could see the cash register from where she was, and could have heard it there, too, if a sale had been rung up. She did not see the defendant buy anything. She testified she also saw the defendant in the store the day before, October 18, in the paint-pet area. He did not buy anything that day either. She identified the defendant two weeks later from a photographic lineup of eight to 10 pictures. The defendant was also identified in court by Gutierrez, Copher, and Turner.

### Fair Hearing/Improper Hearsay Evidence

The defendant correctly asserts that one of the elements of the offense of retail theft which the State was required to prove was that the defendant had taken possession of or carried away the subject files from the Ace Hardware store. (See *People v. Wynn* (1980), 84 Ill. App. 3d 591.) Defendant further asserts that the only evidence of this element was derived from the testimony of Del Logston, whose testimony was based on his reading of the store code number found on the price stickers affixed to the files. The defendant contends the manager's testimony and the store stickers were inadmissible hearsay.

The defendant argues the circumstances of the case at bar distinguish it from this court's decision in *In re T.D.* (1983), 115 Ill. App. 3d 872, where it was held that the label on a tube of glue was competent evidence that the glue contained the prohibited substance Toluol, and that the *corpus delicti* had been proved by the prosecution. The underlying rationale there was that the label was statutorily required, thereby imparting a high degree of trustworthiness. The defendant asserts no such reliability factor is present here and that, but for the code number on the stickers identifying the particular Ace Hardware store, there was no way of identifying the origin of the steel files.

We note that the basis of the defendant's objection as argued at trial was that, unless the files allegedly taken by him were produced at trial, or at least a photograph of files was produced, any testimony by Logston concerning his identification of the files as having originated from his store by reason of the code number on the label was hearsay and inadmissible. As such, the defendant's objection was properly over-

ruled.

It has been established that the credible testimony of one witness is sufficient to sustain a defendant's conviction, even though that testimony may be contradicted by the accused. (*People v. Hasty* (1970), 127 Ill. App. 2d 330.) The fact that the item or items allegedly stolen are not produced in court is legally immaterial. *People v. Banks* (1974), 17 Ill. App. 3d 512, 515; *People v. Hasty* (1970), 127 Ill. App. 2d 330, 335; *cf. People v. Connell* (1980), 91 Ill. App. 3d 326, 335 (even though merchandise allegedly not paid for was not in evidence at trial, store manager's testimony as to items found in defendant's possession and their approximate value was sufficient proof of the items allegedly stolen).

It has been held that:

"[t]he basis for excluding evidence under the hearsay rule lies in the fact that an opportunity to ascertain the veracity of the testimony is absent [citation], and not that the evidence offered may technically fall within the definition of the term. Thus, the essential requirement of the testimonial offering is the opportunity for cross-examination of the party whose assertions are offered to prove the truth of the fact asserted. [Citations.]" *People v. Rogers* (1980), 81 Ill. 2d 571, 577-78.

Clearly, Logston was available at trial for cross-examination as to his ability to identify items carried in stock in his store. Logston testified that the difference between the files produced at trial for demonstrative purposes and the files he was shown on October 19, 1983, was that in addition to the words "Ace price," the price itself, and the item stock number, each sticker had his store code number, 6319. Further, he testified he knew the store number for the east side Ace Hardware store was No. 49.

In *In re T.D.*, this court found its analysis there was consistent with the general rule regarding trade inscriptions:

"That rule, as summarized by leading commentators, provides that '[i]nscriptions, signs, tags, or labels purported to have been affixed in the course of business and indicating ownership, control, or origin, should be considered self-authenticating. The basis for self-authentication of these items is the day-to-day reliance by members of the public on their correctness and the unlikelihood of fabrication.' E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 902.6, at 498-99 (3d ed. 1979)." *In re T.D.* (1983), 115 Ill. App. 3d 872, 877.

The stickers on the files obviously were used to facilitate the day-to-day operation of the business. The store manager's testimony concerning the origin of the files was based on his own personal knowl-

edge and observation of the stickers. As such, it was clearly admissible, and competent evidence.

The defendant also argued that the use of Logston as a witness denied him the right to confront and cross-examine witnesses (U.S. Const., amends. VI and XIV: Ill. Const. 1970, art. I, sec. 8) since Logston had no personal knowledge of the steel files.

We find the issue is patently nonmeritorious, and *People v. Marselle* (1974), 20 Ill. App. 3d 1012, is clearly distinguishable. There, a critical piece of evidence, a letter containing "first- and second-degree" hearsay statements, was admitted and the first- and second-degree declarants were not produced in court, so that the defendant there had no opportunity to confront or cross-examine them.

## CORPUS DELICTI

The defendant asserts the State's proof failed to establish the *corpus delicti* in this case; to wit, that he exerted unauthorized control over merchandise from Ace Hardware with the intent to permanently deprive the store of the use and benefit of said merchandise. He points out no one testified to anything more than that he was observed in the store, that the October 16 inventory of files showed no need to order more at that time, and three days later, all the files were gone. The defendant contends the State's proof allows the alternate conclusions that the store could have sold the files, or that someone else could have stolen the merchandise and later abandoned it, after which he could have found it as he told the police. He concludes that because an essential element of the State's proof was inadmissible hearsay, vacation of the revocation of his probation is mandated. Additionally, he raises the question whether he indeed was the person stopped, arrested and/or booked on the 19th, since he adamantly denied at the hearing that it was he, and Officer Turner gave contradictory testimony as to whether he was taken to the police station on that day.

Addressing the last point first, the officer's contradictory testimony presented only an issue of credibility to be resolved by the trier of fact. Further, the defendant was positively identified in court by Officer Turner and Captain Copher as the person they stopped on the 19th and from whom the steel files were recovered, regardless of the conflict in testimony as to the subsequent disposition of the defendant.

There is no dispute here that at a hearing on a petition to revoke a defendant's probation, the State need only establish a violation of a condition of probation by a preponderance of the evidence, and the determination by the trial court will be reversed only when it is contrary to the manifest weight of the evidence. *People v. Owens* (1983), 116 Ill.

App. 3d 51; *People v. Wadelton* (1980), 82 Ill. App. 3d 684.

"Proof by a preponderance of the evidence is not the same as proof by clear and convincing evidence. The preponderance of the evidence has been defined as evidence sufficient to incline an impartial and reasonable mind to one side of an issue rather than the other. (*Moss-American, Inc. v. Fair Employment Practices Commission* (1974), 22 Ill. App. 3d 248, 259, 317 N.E.2d 343, 351.) A proposition proved by a preponderance of the evidence is one that has been found to be more probably true than not. [Citation.]." *In re Estate of Ragen* (1979), 79 Ill. App. 3d 8, 13.

The term *corpus delicti* has been defined as " 'proof of the fact that a crime has actually been committed and that someone is criminally responsible therefor.' [Citations.]" (*People v. Thomas* (1981), 98 Ill. App. 3d 852, 858, *cert. denied* (1982), 456 U.S. 993, 73 L. Ed. 2d 1289, 102 S. Ct. 2276.) The *corpus delicti* may be proved by circumstantial evidence or by the defendant's own testimony given in defense, which may be judged by its improbabilities. (*People v. Daniels* (1983), 113 Ill. App. 3d 523, 531; see generally *People v. McNeal* (1983), 120 Ill. App. 3d 625, 630.) Intent and unauthorized control can be proved by circumstantial evidence. (*People v. Meyer* (1982), 110 Ill. App. 3d 673.) Where an element of the State's case is proved circumstantially, the proof must be of a conclusive nature, producing a reasonable and moral certainty of the defendant's guilt and excluding any reasonable hypothesis of innocence. (*People v. Williams* (1980), 85 Ill. App. 3d 850, 858; *People v. Trapps* (1974), 22 Ill. App. 3d 1029, 1032-33.) Where two equally reasonable hypotheses exist, the one consistent with innocence must be adopted. (*People v. Ibom* (1962), 25 Ill. 2d 585, 594.) However, the trier of fact need not accept the defendant's version of the facts, but may consider its probability in light of the surrounding circumstances. *People v. Heidorn* (1983), 114 Ill. App. 3d 933, 935.

The defendant's version of the facts, *i.e.*, that he found the files, when considered in light of the surrounding circumstances, does not present a reasonable hypothesis of innocence. Officer Turner said when the defendant noticed the squad cars, he put something inside his coat. Shortly thereafter, when confronted by Captain Copher, the defendant denied he had anything in his coat when, in fact, he did, and the 12 steel files were recovered from inside his coat. A defendant's false statement has been construed as evidencing a consciousness of guilt (*People v. McQueen* (1983), 115 Ill. App. 3d 833, 837), and the court here, as the trier of fact, was entitled to weigh the reasonableness of his explanation that he found the files against the fact that he lied in

response to a direct question asked by a police officer.

■ Del Logston's testimony concerning the identification of the stolen property was not inadmissible hearsay as argued by the defendant. In *People v. Talach* (1983), 114 Ill. App. 3d 813, the court found in fact that the inability of the State's witnesses in that case to identify the stolen coffee as having come from the particular Jewel store in question was not fatal to its case. Because ownership of the item in question is not an element of proof in a retail theft offense, whereas it is in a theft offense (*People v. McNeal* (1983), 120 Ill. App. 3d 625), it does not appear that any defect in the evidence going to the exact origin of the steel files would be fatal to the State's case, so long as there is evidence that the item was merchandise displayed, held, stored or offered for sale. *People v. McNeal* (1983), 120 Ill. App. 3d 625, 628.

■ The circumstantial evidence presented here was that the defendant was seen in the store the day before and on the day in question; he did not purchase anything either time; he was seen about one hour later on the day in question about 1¾ to 2 miles away from the store; when he noticed a squad car, he put "something" in his coat; when asked about it later, he denied anything was in his coat; when 12 steel files with Ace Hardware stickers were discovered in his coat, he said he found them on the ground behind Helm TV; the officer who first observed the defendant behind Helm TV testified he did not see the defendant bend down or pick up anything from the ground; when the files were recovered from the defendant's coat they were clean and bore no trace of dirt or moisture; the store manager identified the files as having come from his store; three empty peg hooks were found where the files had been on display; and a store inventory completed three days earlier showed no need to order more files at that time. We conclude the State sustained its burden of proof by a preponderance of the evidence.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

HOPF and STROUSE, JJ., concur.