RANDALL MILAN, Plaintiff-Appellant, v. THE HUMAN RIGHTS COMMIS-
SION *et al.*, Defendants-Appellees.

First District (5th Division)   No. 87—0422

Opinion filed May 6, 1988.

William T. McGrath and Wendy R. Vandenberg, both of Chicago (Chadwell & Kayser, Ltd., of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Eddie Santiago, Assistant Attorney General, of Chicago, of counsel), for respondent Human Rights Commission.

Herbert D. Hill, Sharon Eiseman, and Ellen Szymanski, all of Evanston, for respondent City of Evanston.

JUSTICE MURRAY delivered the opinion of the court:

This matter comes before the court on direct appeal from the Human Rights Commission pursuant to section 8—111 of the Illinois Human Rights Act (Ill. Rev. Stat. 1985, ch. 68, par. 8—111(A)(3)). Appellant Randall Milan appeals from a decision and order of the Illinois Human Rights Commission (Commission) that reversed the administrative law judge's (ALJ's) determination that the City of Evanston (city) had discriminated against Milan on the basis of his physical

handicap. The following facts are pertinent to this review.

Milan, a deaf-mute, worked as a custodian for the city's water department for approximately 16 years. It is undisputed that his handicap did not affect his work. He communicates by signing, gesturing, some lipreading, and by writing notes, the coherence of which is significantly limited. After taking his vacation in early November 1982, Milan requested 10 days of vacation time around Thanksgiving. Telling Milan that he had only 12 hours of vacation time left, his supervisor of six years, Richard Figurelli, allowed Milan to leave work at midday on Tuesday, November 23, to visit his daughter and grandchild in Lynch, Kentucky. Several times, Figurelli expressly informed Milan by written notes that he must return to work on Monday, November 29 or risk losing his job.

Milan had $400 or $500 with him when he left for Kentucky. He subsequently stopped in Indiana to pay a car repair bill incurred in early November, arriving in Lynch on November 23. Before leaving Lynch for the return trip on Sunday, November 28, Milan borrowed $60 from a friend, Zelph Wallen, for trip expenses. He also asked Wallen to call his employers and tell them that Milan would be late returning to work due to money problems. A city employee did receive a message from Wallen on the 28th but was told that Milan's return would be delayed due to bad weather. After this call, other city employees were instructed not to accept any collect telephone calls. Milan arrived in Lexington, Kentucky, on the evening of the 28th and was stranded there until December 11 due to car breakdown and money problems.

Milan eventually sought help from the Salvation Army in Lexington. Laurel Martin of the Salvation Army called Figurelli on December 1, telling him of Milan's money and car problems and requested the city to send Milan's paycheck to him in care of the Salvation Army. The city sent the check by registered mail the next day and Milan received it on December 8. Martin refused to make several other calls to the city as requested by Milan because of the expense. The record also reveals that Milan sent five postcards from Lexington to the city's water department, at least one of which was received before Milan's return to Evanston. None of the cards mentioned his difficulties.

Milan's car was temporarily repaired on December 2 and immediately developed other problems. During the time the second repairs were being made at a different service station, a secretary in a nearby office building attempted several times to call the city on Milan's behalf but the city refused to accept the collect calls. Figurelli

denies any incoming collect calls on those days and stated that he would have taken them since he was anticipating communication from Milan regarding his absence. Also, at this time, Milan had located a meeting place for deaf persons. On Saturday evening, December 11, Milan attended a basketball game in Lexington and left for Evanston immediately afterwards. He arrived in Evanston Sunday, December 12, and was fired when he returned to work on Monday.

The reason given for Milan's discharge was that he had violated the city's work abandonment rule. That rule provides that a person is considered to have abandoned his job after an unexcused absence of three consecutive days without contact with his supervisor and provides for automatic termination. After his termination, Milan met with the city's personnel director and tried to explain his situation in a series of notes. Milan stated in the notes that he was aware of the work rules. This meeting resulted in no change regarding Milan's automatic termination. He then filed a grievance action with his union which resulted in his discharge being upheld.

After a hearing on Milan's complaint before the Human Rights Commission, the ALJ determined that Milan had demonstrated a *prima facie* case of discrimination since the city was aware of his communication limitations and also knew that he was stranded with car and money problems. The ALJ also found that, in light of this knowledge, the city failed to reasonably accommodate Milan's handicap in applying its automatic abandonment rule. Since the city's defense that it applied a valid rule in a consistent manner did not show a reasonable accommodation, the ALJ concluded that it did not meet its burden of articulating a legitimate, nondiscriminatory reason for Milan's discharge.

The Human Rights Commission rejected the ALJ's legal conclusions and accepted the factual findings to the extent they were not inconsistent with the Commission's decision. The Commission found that the ALJ's focus on the "relatedness" between Milan's handicap and his discharge exceeded the parameters of the Human Rights Act, and that attention should have been directed as to whether the city's rule had a disparate impact on members of a particular protected group. Such a discrimination claim must be based on the effect of the call-in policy on a specific *class*; a claim based on difficulties one employee had with the rule is insufficient to show discrimination. The Commission additionally determined that Milan's problems were the result of his own actions because he took his trip in an old car subject to breakdown and because he took insufficient funds to complete his trip. Based on these facts, the Commission concluded that Milan failed

to establish a *prima facie* case of discrimination and further noted that discipline for violation of work rules is permissible even though the violation occurred because of a handicap. (See *Sarna, and South Suburban Hospital* (1984), 13 Ill. HRC Rep. 171.) Accommodation is only required if the employee cannot do the job in issue without some help, and Milan's predicament was, for the most part, unrelated to his handicap.

The Commission further found that, even if there were a "relation," Milan did not show the necessity of accommodation regarding the call-in policy because of the postcards sent to his employer. The postcard messages were consistent with those of a vacationer. Thus, Milan did not avail himself of the opportunity to inform his employer of his difficulties. Moreover, Milan did not initiate the request for accommodation, as is generally required pursuant to Commission rules. (56 Ill. Adm. Code 2500.40(c) (1985).) The Commission concluded that Milan showed no proof that he was subjected to intentional discrimination under the disparate treatment theory; neither was discrimination under the disparate impact theory shown. And, even if a *prima facie* case had been established by Milan, the city articulated a legitimate, nondiscriminatory reason for discharge, *i.e.*, consistent application of a valid work rule.

Because of our limited jurisdiction concerning review of Human Rights Commission appeals, we must affirm the Commission's decision.

A reviewing court should not overrule a decision of the Human Rights Commission unless that decision is contrary to the manifest weight of the evidence. (*K mart Corp. v. Human Rights Comm'n* (1984), 129 Ill. App. 3d 842, 473 N.E.2d 73.) This court is not authorized to review the ALJ's findings, but can only review the final decision of the administrative agency. (*Department of Corrections v. Adams* (1986), 146 Ill. App. 3d 173, 496 N.E.2d 1138.) The legislature has vested the legitimate decision-making authority in the Commission, and not its hearing officer, and the Commission is free to reject the hearing officer's recommended decision if it determines it is against the manifest weight of the evidence. *Adams,* 146 Ill. App. 3d 173, 496 N.E.2d 1138.

In analyzing employment discrimination cases under the Human Rights Act, Illinois courts have adopted the three-step analysis enunciated by the Supreme Court in *McDonnel Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817. (See *Village of Oak Lawn v. Illinois Human Rights Comm'n* (1985), 133 Ill. App. 3d 221, 478 N.E.2d 1115.) First, plaintiff must establish, by a

preponderance of the evidence, a *prima facie* case of unlawful discrimination; such a showing creates a rebuttable presumption that the employer unlawfully discriminated against him. Second, upon such a showing, the burden of proof then shifts to the employer to rebut the presumption by articulating a clear, nondiscriminatory reason for its employment decision. Third, if the employer meets this burden of proof, the presumption of unlawful discrimination fails, and plaintiff must then prove, by a preponderance of the evidence, that the employer's proffered legitimate reason is not a true reason, but merely a pretext. Thus, the ultimate burden of proving unlawful discrimination remains at all times on the plaintiff and both direct and indirect evidence can be considered; if plaintiff can show that the employer's explanation is unworthy of belief, he has met his burden. *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089.

■ In the present case, the Commission reversed the ALJ's finding of a *prima facie* case of unlawful discrimination. Under the Illinois Act, a *prima facie* case of discrimination based upon a physical handicap is shown by establishing that the employee is handicapped, that an adverse job action related to his handicap was taken against him, and that his handicap is unrelated to his ability to perform the job. (*Kenall Manufacturing Co. v. Human Rights Comm'n* (1987), 152 Ill. App. 3d 695, 504 N.E.2d 805.) These criteria have been interpreted by Commission rules to include a requirement of accommodation of an employee's handicap by the employer, but the employee bears the burden to assert the duty and to show that the accommodation was requested and necessary for adequate job performance.

■ Applying these criteria to this case, the only issues relevant to a determination of a *prima facie* case of discrimination are whether Milan's discharge was related to his handicap and whether the city properly accommodated plaintiff's handicap. The Commission found that the ALJ's determination of "relatedness," on the basis that Milan's handicap made compliance with the city's call-in rule substantially more difficult, exceeded the scope of the Act. We agree with the Commission.

The record reveals that Milan effectively communicated with the city for 16 years. It is also indicated that Milan, on prior occasions, had been informed of the necessity of communicating with his supervisor during unauthorized absences, and further, that sometimes Milan had communicated with the president of his union for aid in relating information to his employer while he was absent. The record also discloses that, with the help of a stranger, he had made and paid for a

long distance call from Indiana to the city to explain his tardy return during his trip in early November. Milan was able to enlist someone in Lexington to call Evanston and request his paycheck. Moreover, it is also apparent that he had alternative means to inform the city of his situation as indicated by his sending vacation-worded postcards to his employer, and by a card sent to his daughter which outlined his money problems. Coupled with the fact that Milan was admittedly aware of the call-in rule and the risk of discharge if he did not return on time, these facts adequately support the Commission's determination that Milan was discharged because he violated the rule, which violation was the result of his own imprudent behavior and was not related to his handicap.

■ Regarding the issue of accommodation, there is ample evidence in the record that the city had accommodated plaintiff's handicap on many occasions during his 16 years of employment. Furthermore, it is unreasonable to demand an employer to make an after-the-fact accommodation regarding a valid work rule, especially since the rule did not relate to the manner in which Milan performed his job.

■ The Commission found that the facts did not support a finding of disparate impact, *i.e.*, whether a neutral practice has a significantly discriminatory effect on the protected group to which the complainant belongs. (*Griggs v. Duke Power Co.* (1971), 401 U.S. 424, 28 L. Ed. 2d 158, 91 S. Ct. 849; *Board of Trustees v. Knight* (1987), 163 Ill. App. 3d 289, 516 N.E.2d 158.) Milan contends that the Commission's use of the disparate impact test to determine if his discharge was "related" to his handicap was improper, as evidenced by prior Commission decisions which have uniformly applied the three-step *McDonnel Douglas* test in determining whether a *prima facie* case has been shown. There is no need for this court to address this argument since the record adequately supports the Commission's finding that Milan's predicament "was of his own making" and that he was discharged because he violated a legitimate work rule, not because of his handicap.

■ "Preponderance of the evidence" has been interpreted to mean the greater weight of the evidence, not necessarily in numbers of witnesses, but in merit and worth that which has more evidence for it than against it; the evidence is sufficient if it inclines an impartial and reasonable mind to one side rather than to the other. (*Moss-American, Inc. v. Illinois Fair Employment Practices Comm'n* (1974), 22 Ill. App. 3d 248, 317 N.E.2d 343.) Accordingly, we cannot say that the Commission erred in finding that Milan failed to prove a

*prima facie* case of unlawful discrimination by a preponderance of the evidence. Even assuming that a *prima facie* case had been established, Milan's charge of discrimination must fail in that he did not carry his burden of proof to show that the city's reason of "business necessity" was a pretext.

Therefore, since the order of the Human Rights Commission is not against the manifest weight of the evidence, we must affirm it.

Affirmed.

SULLIVAN and PINCHAM, JJ., concur.